[No. A081264. First Dist., Div. One. July 24, 1998.]

C. A. TERHUNE, as Director, etc., Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent;
BARRY WHITLEY, Real Party in Interest.

**COUNSEL**

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Peter J. Siggins, Assistant Attorney General, Morris Lenk, Bruce M. Slavin and Greg Mangani, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Charles H. James, Public Defender, and Ron Boyer, Deputy Public Defender for Real Party in Interest.

Michael P. Judge, Public Defender (Los Angeles), Albert J. Menaster and John J. Vacca, Deputy Public Defenders, Klein & Crain, Rowan K. Klein, Donald Specter and Arnold Erickson as Amici Curiae.

## OPINION

**STRANKMAN, P. J.**—The Board of Prison Terms (the Board) has promulgated numerous regulations relating to conditions of parole and revocation of parole, which appear in title 15 of the California Code of Regulations. Section 2616 of those regulations lists "kinds of behavior" that must be reported to the Board as a parole violation. Subdivision (a)(7) of section 2616 (hereafter section 2616(a)(7)), states: "Psychiatric Treatment. Facts indicating the parolee is suffering from a mental disorder which substantially impairs the parolee's ability to maintain himself or herself in the community, or which makes the parolee a danger to himself/herself or others, when necessary psychiatric treatment cannot be obtained in the community."[1]

The inmate in this case served a determinate prison term. After his initial parole release date passed, but before he was released into the community, his parole was revoked twice, based solely on section 2616(a)(7). As we will explain, we conclude that under all the circumstances here, the parole revocation was an act in excess of the Board's statutory authority.

### FACTUAL AND PROCEDURAL BACKGROUND

#### A. *Introduction*

An understanding of the factual and procedural background of this case requires some familiarity with the Sexually Violent Predators Act (SVP Act) (Welf. & Inst. Code, § 6600 et seq.), which was enacted in 1995. (Stats. 1995, ch. 762, § 3; *id.*, ch. 763, § 3.) Even though this case does not directly

---

[1] A recommendation for a revocation hearing based on section 2616(a)(7) must be accompanied by a psychiatric report and shall not be made when violations of other terms or conditions of parole are charged. (Cal. Code Regs., tit. 15, § 2620, subd. (c).) When parole is revoked for psychiatric treatment, the time in custody is not added to the parole period. If the parolee's condition changes during the revocation period so that he or she is no longer a person described in section 2616(a)(7), department staff must recommend release, and the Board must take action on the recommendation within three working days of receipt of the information. If the parolee is not being actively treated in a psychiatric program, the matter must be submitted to the Board for its consideration. (Cal. Code Regs., tit. 15, § 2647.1.)

involve that act, a synopsis of its somewhat detailed provisions is a necessary preface to our explanation of the proceedings that culminated in the parole revocation at issue.

The Legislature stated its purpose in enacting the SVP Act as follows: "The Legislature finds and declares that a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders can be identified while they are incarcerated. These persons are not safe to be at large and if released represent a danger to the health and safety of others in that they are likely to engage in acts of sexual violence. The Legislature further finds and declares that it is in the interest of society to identify these individuals prior to the expiration of their terms of imprisonment. It is the intent of the Legislature that once identified, these individuals, if found to be likely to commit acts of sexually violent criminal behavior beyond a reasonable doubt, be confined and treated until such time that it can be determined that they no longer present a threat to society. [¶] The Legislature further finds and declares that while these individuals have been duly punished for their criminal acts, they are, if adjudicated sexually violent predators, a continuing threat to society. The continuing danger posed by these individuals and the continuing basis for their judicial commitment is a currently diagnosed mental disorder which predisposes them to engage in sexually violent criminal behavior. It is the intent of the Legislature that these individuals be committed and treated for their disorders only as long as the disorders persist and not for any punitive purposes." (Stats. 1995, ch. 762, § 1; *id.*, ch. 763, § 1.)

The SVP Act establishes a procedure that may result in the civil commitment of a sexually violent predator, which it defines as a person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence, and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior. (Welf. & Inst. Code, § 6600, subd. (a).)

Under the SVP Act, the Department of Corrections (the Department) is authorized to refer "an individual who is in custody under the jurisdiction of the Department . . . and who is either serving a determinate prison sentence or whose parole has been revoked" for an initial screening and an evaluation by the Department of Mental Health to determine whether the person is a sexually violent predator. With certain exceptions, the reference for evaluation must be made at least six months before the individual's scheduled release date; the evaluation is to be conducted by two specified mental health professionals. (Welf. & Inst. Code, § 6601, subds. (a), (d).)

If both mental health professionals concur that the individual is a sexually violent predator, the Director of the Department of Mental Health must forward a request for a petition for commitment to the county in which the prisoner was last convicted.[2] (Welf. & Inst. Code, § 6601, subd. (d).) If the petition is filed by the county district attorney or county counsel, the trial court must hold a "probable cause hearing." If the court finds probable cause to believe the person is likely to engage in sexually violent predatory criminal behavior upon his release, it must order a trial. (Welf. & Inst. Code, § 6602.) The SVP Act affords the individual a number of procedural safeguards, including the right to trial by jury, the assistance of counsel, and the right to retain experts. The standard of proof is beyond a reasonable doubt; if the individual has requested a jury, the verdict must be unanimous. (Welf. & Inst. Code, §§ 6603, 6604.)

A person determined at trial to be a sexually violent predator must be committed to the Department of Mental Health for appropriate treatment and confinement in a secure facility for two years, and is subject to extended commitments incident to the filing of new petitions. The SVP Act also includes provisions for an annual review of the individual's mental condition, conditional release, and discharge upon a determination at a hearing of a change in that condition. (Welf. & Inst. Code, §§ 6604, 6605.)[3]

B. *Revocation of Real Party's Parole for Psychiatric Treatment*

With that background, we summarize the material facts in this case. Real party in interest Barry Whitley, who has a long criminal history, was serving a determinate prison term for aggravated assault, false imprisonment, battery and other offenses. His parole release date was in mid-August 1996. Sometime before that date, he was referred by the Department for evaluation under the SVP Act. Instead of being released on his parole release date, he was held in custody based on a since-repealed provision of that act, while the District Attorney of Contra Costa County filed a petition for his commitment

---

[2] If only one of the professionals performing the evaluation determines that the individual is a sexually violent predator, the Department of Mental Health must arrange for further examination of the person by two independent health professionals with specified qualifications. (Welf. & Inst. Code, § 6601, subds. (e), (g).)

[3] Several cases involving the constitutionality of the SVP Act are now pending before the California Supreme Court, including *People v. Hedge* (1997) 56 Cal.App.4th 773 [65 Cal.Rptr.2d 693], review granted October 29, 1997 (S063954); *Hubbart v. Superior Court* (1996) 50 Cal.App.4th 1155 [58 Cal.Rptr.2d 268], review granted February 26, 1997 (S052136); *Garcetti v. Superior Court* (1996) 49 Cal.App.4th 1533 [57 Cal.Rptr.2d 420], review granted February 5, 1997 (S057336), and *People v. Superior Court (Cain)* (1996) 49 Cal.App.4th 1164 [57 Cal.Rptr.2d 296], review granted February 5, 1997 (S057272). Recently the United States Supreme Court upheld the constitutionality of a similar act enacted by Kansas. (*Kansas v. Hendricks* (1997) 521 U.S. 346 [117 S.Ct. 2072, 138 L.Ed.2d 501].)

as a sexually violent predator. (See Welf. & Inst. Code, former § 6601.3; Stats. 1996, ch. 4, § 2.) The Board also placed an additional hold on Whitley to determine whether his parole should be revoked for psychiatric treatment based on section 2616(a)(7).[4]

In late September 1996, the trial court dismissed the petition for commitment under the SVP Act, ruling that there was no probable cause within the meaning of Welfare and Institutions Code section 6602. In November 1996, Whitley's parole was revoked for 12 months for psychiatric treatment under section 2616(a)(7). That revocation would expire on September 16, 1997.

But in March 1997, the Department again referred Whitley to the Department of Mental Health for evaluation under the SVP Act and in mid-August the Board placed a hold on Whitley based on that act. In early September, however, it rescinded that hold, scheduled a parole revocation extension hearing, and placed a hold on Whitley pending that hearing. On October 15, 1997, the revocation extension hearing was held. For reasons relating to Whitley's conduct in prison that are unnecessary to explain here, his parole release date was recalculated to be *September 26, 1997*. As that date had passed, initially his immediate release was ordered, but the release did not occur. Instead, the Board placed new holds on Whitley based on the SVP Act and a related regulation.[5]

At the end of October the District Attorney of Contra Costa County filed another petition for commitment of Whitley as a sexually violent predator. Whitley opposed the petition, arguing that: (1) the November 1996 revocation of his parole based on his psychiatric condition alone was unconstitutional; and (2) because he had been held beyond his parole release date, he was not subject to commitment under the SVP Act. At a hearing, the trial court deemed Whitley's opposition to be tantamount to a habeas corpus

---

[4]The Board's regulations define a "hold" as "A request by a department employee that a parolee be held in custody until further notice. . . ." (Cal. Code Regs., tit. 15, § 2000, subd. (b)(52).) The regulations also provide that a parolee suspected of a parole violation may be detained by a parole hold where the parolee is a danger to himself or to the person or property of others, or where he may abscond, or when he is alleged to be a person described in section 2616(a)(7). (Cal. Code Regs., tit. 15, § 2601.)

[5]That regulation provides a mechanism for screening parolees in revoked status and inmates under the sexually violent predator program "where exceptional circumstances preclude an earlier evaluation and judicial determination of probable cause . . . prior to return to custody or release on parole." (Cal. Code Regs., tit. 15, § 2600.1, subd. (a).) It provides that if there is some evidence to believe that an inmate or parolee in revoked status is a sexually violent predator within the meaning of the SVP Act, the Board may order imposition of a temporary hold on the inmate or parolee in revoked status for up to three working days pending a probable cause hearing by the Board. If the Board finds probable cause, the parolee shall be held up to a maximum of 45 days pending a superior court probable cause hearing. (*Id.* at subds. (b), (c).)

petition stating a prima facie case for relief. The district attorney informed the court that he would not oppose dismissal of the sexually violent predator petition, but he also informed the court that on December 2, 1997, the Board had placed another hold on Whitley to evaluate him yet again for parole revocation for psychiatric treatment under section 2616(a)(7).

Thereafter, Whitley filed a habeas corpus petition, challenging the legality and constitutionality of that parole hold. The trial court issued an order to show cause. On January 8, 1998, despite the pending habeas proceeding, Whitley's parole was revoked a second time for psychiatric treatment based on section 2616(a)(7). The following day, the trial court granted the habeas petition and ordered Whitley's immediate release. The court reasoned in part that as applied to Whitley, section 2616(a)(7) was unconstitutional, was in excess of the authority conferred by the applicable statutes, and was "preempted" by the SVP Act. The court also expressed the view that the state's failure to apply the SVP Act properly against Whitley precluded use of essentially the same psychiatric grounds to revoke his parole.

An order granting a petition for habeas corpus is an appealable order. (Pen. Code, § 1506.) Nevertheless, the Director of the Department of Corrections (the director) filed a petition for writ of mandate in this court challenging the trial court's order, arguing that appeal would not be an adequate remedy. Alternatively, the director sought a writ of supersedeas staying enforcement of the order pending an appeal. After staying the order, we issued our alternative writ, ordered the filing of a return, and calendared the matter for oral argument.

## DISCUSSION

■ The director argues that the revocation of parole for psychiatric treatment under section 2616(a)(7) does not violate substantive or procedural due process requirements, that Whitley has not been denied equal protection, and that the revocation did not violate any state statutes. Because courts should avoid resolving constitutional issues if a case can be decided on statutory grounds (*De Lancie* v. *Superior Court* (1982) 31 Cal.3d 865, 877, fn. 13 [183 Cal.Rptr. 866, 647 P.2d 142]), we begin by considering the trial court's conclusion that the application of section 2616(a)(7) to revoke Whitley's parole was an act in excess of the Board's statutory authority.

■ Administrative agencies have only the powers conferred on them, either expressly or impliedly, by the Constitution or by statute, and administrative actions exceeding those powers are void. (*American Federation of Labor* v. *Unemployment Ins. Appeals Bd.* (1996) 13 Cal.4th 1017, 1042 [56 Cal.Rptr.2d 109, 920 P.2d 1314].) To be valid, administrative action must be

within the scope of authority conferred by the enabling statutes. (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697].) We recognize that the courts usually give great weight to the interpretation of an enabling statute by officials charged with its administration, including their interpretation of the authority vested in them to implement and carry out its provisions. (*People* ex rel. *Lungren* v. *Superior Court* (1996) 14 Cal.4th 294, 309 [58 Cal.Rptr.2d 855, 926 P.2d 1042].) But regardless of the force of administrative construction, final responsibility for interpretation of the law rests with courts. If the court determines that a challenged administrative action was not authorized by or is inconsistent with acts of the Legislature, that action is void. (*Association for Retarded Citizens* v. *Department of Developmental Services* (1985) 38 Cal.3d 384, 391 [211 Cal.Rptr. 758, 696 P.2d 150].)

These principles apply to the rulemaking power of an administrative agency, which is limited by the substantive provisions of the law governing that agency. (*Environmental Protection Information Center* v. *Department of Forestry & Fire Protection* (1996) 43 Cal.App.4th 1011, 1022 [50 Cal.Rptr.2d 892]; *Masonite Corp.* v. *Superior Corp.* (1994) 25 Cal.App.4th 1045, 1053 [31 Cal.Rptr.2d 173]; *Physicians & Surgeons Laboratories, Inc.* v. *Department of Health Services* (1992) 6 Cal.App.4th 968, 982 [8 Cal.Rptr.2d 565].) To be valid, an administrative regulation must be within the scope of the authority conferred by the enabling statute or statutes. (*Woods* v. *Superior Court* (1981) 28 Cal.3d 668, 680 [170 Cal.Rptr. 484, 620 P.2d 1032]; see Gov. Code, §§ 11342.1, 11342.2.) No matter how altruistic its motives, an administrative agency has no discretion to promulgate a regulation that is inconsistent with the governing statutes. (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 419 [128 Cal.Rptr. 183, 546 P.2d 687].)

With these principles in mind, we examine the statutes relating to parole. When a defendant is serving an indeterminate prison term, the Board is vested with power to rescind or postpone his or her parole date for cause. (See Pen. Code, §§ 3041.5, 3041.7; *In re Powell* (1988) 45 Cal.3d 894, 901-902 [248 Cal.Rptr. 431, 755 P.2d 881].) But under the determinate sentencing law, the Legislature has decreed that "[a]t the expiration of a term of imprisonment . . . imposed pursuant to Section 1170 or at the expiration of a term reduced pursuant to Section 2931, if applicable, the inmate shall be released on parole for a period not exceeding three years, unless the parole authority for good cause waives parole and discharges the inmate from custody of the department." (Pen. Code, § 3000, subd. (b)(1).) Describing this language as "a mandatory 'kick-out' provision," the Supreme Court has stated, "The Board of Prison Terms has no discretion to grant or withhold

parole to a prisoner who has served a determinate term." (*People* v. *Burgener* (1986) 41 Cal.3d 505, 529, fn. 12 [224 Cal.Rptr. 112, 714 P.2d 1251]; see also *McCarthy* v. *Superior Court* (1987) 191 Cal.App.3d 1023, 1028 [236 Cal.Rptr. 833]; 66 Ops.Cal.Atty.Gen. 239, 243 (1983).)[6]

■ At the same time, the Legislature has given the Board expansive authority to establish and enforce rules and regulations governing parole and to impose any parole conditions it deems proper. (Pen. Code, §§ 3052, 3053.)[7] These conditions must be reasonable, since parolees retain constitutional protection against arbitrary and oppressive official action. Nevertheless, the conditions may govern a parolee's residence, his associates or living companions, his travel, his use of intoxicants, and other aspects of his life. When appropriate, a parolee may be required to undergo narcotics testing, attend outpatient mental hygiene treatment sessions, and report periodically in person or by mail to the parole agent, who may in turn visit the parolee at home or at work. (*People* v. *Burgener, supra,* 41 Cal.3d at pp. 531-532; see also *Morrissey* v. *Brewer* (1972) 408 U.S. 471, 492 [92 S.Ct. 2593, 2605-2606, 33 L.Ed.2d 484].)

A parolee remains under the legal custody of the Department and is subject at any time to be taken back to prison, and the Legislature has vested the Board with "full power to suspend or revoke any parole, and to order returned to prison any prisoner upon parole." (Pen. Code, §§ 3060, 3056.) No statute attempts to define the scope of that power, although Penal Code section 3063 specifies that no parole shall be revoked "without cause, which cause must be stated in the order suspending or revoking the parole." And Penal Code section 3057 limits confinement pursuant to "a revocation of parole" in the absence of a new conviction and commitment to prison to 12 months, except that the parole authority may extend the confinement pursuant to a revocation for "*subsequent acts of misconduct* committed by the parolee while confined pursuant to that parole revocation." (Pen. Code, § 3057, subds. (a), (c), italics added.) ■ The 12-month limitation on confinement in Penal Code section 3057, subdivision (a), applies to each

---

[6]At the time *Burgener* was decided, the statutory language we have quoted appeared in Penal Code section 3000, subdivision (a). At issue in *Burgener* was the validity of the warrantless search of a parolee. Defendant argued that because the determinate sentencing law mandates parole for inmates who have served a determinate term, the search could not be justified based on the rationale that he had consented to a search condition among terms of his parole. The Supreme Court acknowledged that an inmate's acceptance of parole under that law is not pursuant to a voluntary agreement. (*People* v. *Burgener, supra,* 41 Cal.3d at p. 529 & fn. 12.) At the same time, it rejected the consent rationale for analyzing parole conditions; instead, it applied a balancing approach and concluded the search was reasonable. (*Id.* at pp. 529-536.)

[7]In addition, some parole conditions are mandated by statute. (Pen. Code, §§ 3053.2, 3053.5.)

individual revocation of parole. (*In re Philpott* (1985) 163 Cal.App.3d 1152, 1157 [210 Cal.Rptr. 95].)

■ While the Board's statutory authority to revoke parole is broad, revocation procedures must comport with certain minimum federal constitutional due process requirements, including the opportunity for a hearing on whether a violation of parole has occurred and if so, whether it warrants revocation. (*Morrissey* v. *Brewer, supra,* 408 U.S. at pp. 487-489 [92 S.Ct. at pp. 2603-2604].) But that hearing is not equivalent either to a criminal prosecution or to the trial required for civil commitment under the SVP Act, and the Board's regulations permit revocation after a hearing by one hearing officer. (Cal. Code Regs., tit. 15, §§ 2645, 2646, 2000, subd. (51) [defining "hearing panel" as one or more persons assigned to consider a case or make a decision].)

First, we briefly address the argument that Whitley was not subject to parole revocation because he remained incarcerated and was therefore not a parolee. The Board's own regulations define a parolee as a "felon released from confinement in state prison to supervision in the community," and state that "[r]elease on parole is the actual transfer of a prisoner confined in prison to parole supervision in the community." (Cal. Code Regs., tit. 15, §§ 2000, subd. (b)(75), 2355.) But regardless of those regulations, for our purposes here, Whitley's status as a parolee cannot be questioned. Upon expiration of his determinate prison term, he had no status other than parolee. (See Pen. Code, § 3000, subd. (b)(1); Cal. Code Regs., tit. 15, § 3075.2, subd. (a) ["Inmates shall not be retained beyond their discharge date."]; *McCarthy* v. *Superior Court, supra,* 191 Cal.App.3d at p. 1028.)

■ It is settled that in an appropriate case, the Board has authority to require psychiatric treatment as a condition of parole. (*In re Naito* (1986) 186 Cal.App.3d 1656, 1660-1663 [231 Cal.Rptr. 506]; see also *People* v. *Burgener, supra,* 41 Cal.3d at p. 531.) The Board may revoke the parole of a prisoner who refuses to sign a parole agreement imposing such a condition and order the prisoner returned to prison. (See Pen. Code, § 3060.5; *People* v. *Kirkland* (1994) 24 Cal.App.4th 891, 904 [29 Cal.Rptr.2d 863].) When psychiatric treatment is a condition of parole, the Board may also revoke that parole based on conduct indicating that the parolee's mental condition has deteriorated such that he is likely to repeat the criminal conduct that resulted in his conviction in the first place. (*In re Naito, supra,* at pp. 1661-1662.)

The director relies on *In re Naito, supra,* 186 Cal.App.3d 1656 to argue that the revocation of Whitley's parole was lawful. In *Naito,* a woman convicted of voluntary manslaughter was released on parole on several

conditions, including that she receive psychotherapy, take antipsychotic medication, and refrain from threatening and harassing others. After the parole agent became convinced from the parolee's verbal hostility and other evidence that she had not been taking her medication, she was taken into custody on an emergency basis pursuant to the regulation at issue in the present case. Her parole was ultimately revoked based on conduct determined to be a threat to the parole agent. (*Id.* at pp. 1659-1661.)

The parolee challenged the revocation, arguing that she was returned to prison for violating a parole condition that was invalid because it required that she not become mentally ill. The appellate court disagreed. It reasoned that the regulation is not a parole condition punishing a parolee for becoming mentally ill; instead, it functions as a guide for the parole officer whose task is to recognize warning signs. "In assessing whether the parolee's behavior amounts to conduct which must be reported to the Board, the parole officer cannot examine that behavior in a vacuum. Rather, the officer must look at how the parolee's mental condition contributed to his or her conviction, and the likelihood that the parolee, under appropriate mental conditions, will repeat that conduct." (*In re Naito, supra,* 186 Cal.App.3d at p. 1662.) Because the criteria set forth in the regulation related both to the parolee's crime, a violent felony prompted by her mental instability, and to future criminality, it did not amount to an unreasonable condition of parole.[8] (*In re Naito, supra,* 186 Cal.App.3d at p. 1662.)

The revocation in *Naito* occurred after the parolee had been released into the community on condition that she receive psychiatric treatment; furthermore, her parole was revoked not because of her mental condition, but because of her conduct considered in light of that condition. In contrast, the instant case involves the Board's reliance on its regulation to revoke parole before ever releasing Whitley into the community, not for any misconduct, but based solely on a psychologist's assessment of his mental condition and need for psychiatric treatment. Given those substantial differences, *Naito* does not resolve the question confronting us in this case.

To answer that question, we cannot limit our consideration only to those general statutes vesting the Board with broad authority over parole-related matters. ■ Whenever we are attempting to ascertain legislative intent, we must not read statutes in isolation or out of context; instead, we must read statutes relating to the same subject together and harmonize them to the extent possible. (*People v. Valladoli* (1996) 13 Cal.4th 590, 599-601 [54

[8]In dicta, the *Naito* court noted that should the parolee again violate her parole, she would be entitled to evaluation under the criteria set forth in Penal Code section 2960 (the mentally disordered offender law), which was not in effect at the time she was taken into custody. (*In re Naito, supra,* 186 Cal.App.3d at pp. 1662-1663.)

Cal.Rptr.2d 695, 918 P.2d 999].) Thus in addition to the general statutes concerning parole, we must consider the Legislature's enactment of other statutes dealing directly with the specific problem presented by inmates such as Whitley who may soon be entitled to release into the community on parole, but who may be suffering from mental disorders that give rise to public safety concerns.

In 1986, the Legislature enacted the mentally disordered offender law (MDO Law) (Pen. Code, § 2960 et seq.), which is intended to protect the public from certain prisoners with dangerous, treatable mental disorders and to provide treatment for those prisoners. (Pen. Code, § 2960; see *People* v. *Superior Court* (*Myers*) (1996) 50 Cal.App.4th 826, 830 [58 Cal.Rptr.2d 32].) As amended in 1989, the MDO Law requires certain mentally disordered prisoners who have committed specified violent crimes to submit to continued mental health treatment after their release on parole. A prospective parolee (a) who has a severe mental disorder that is not in remission or cannot be kept in remission without treatment, (b) whose disorder was a cause of or an aggravating factor in the commission of a crime for which the prisoner was sentenced to prison, (c) who has been in treatment for the disorder for 90 days or more within the year before the prisoner's parole or release, and (d) who has been certified by a designated mental health professional to represent a substantial danger of physical harm to others by reason of his disorder, must be treated by the Department of Mental Health as a condition of parole. (Pen. Code, § 2962, subds. (a)-(d).) The treatment must be inpatient unless that Department certifies to the Board that the parolee can be safely and effectively treated as an outpatient. (Pen. Code, § 2964, subd. (a).)

The MDO Law affords the prisoner a number of procedural safeguards. For instance, the prisoner is entitled to an examination by two appointed independent mental health professionals and a hearing before the Board on whether he or she meets the requirements for mandatory treatment. The prisoner who disagrees with the Board's determination may petition for a civil hearing on the question, and is entitled to representation by appointed counsel and to a jury trial with a unanimous verdict based on proof beyond a reasonable doubt. (Pen. Code, § 2966, subds. (a), (b).) At the end of the prisoner's parole period, if the severe mental disorder is not in remission or cannot be kept in remission without treatment, the district attorney may petition for continued involuntary treatment. As with the initial commitment, the prisoner is entitled to a civil hearing on the question. (Pen. Code, §§ 2970, 2972.)

Involuntary civil commitment of a mentally disordered inmate may also be sought under the Lanterman-Petris-Short Act (LPS Act) (Welf. & Inst.

Code, § 5000 et seq.). The LPS Act establishes procedures for the involuntary treatment of persons, who, by reason of a mental disorder, are dangerous to others or to themselves, or who are gravely disabled. Such persons may be taken into custody for 72-hour treatment (Welf. & Inst. Code, § 5150), detained for treatment for an additional 14 days (Welf. & Inst. Code, §§ 5250, 5256.6), and confined for up to 180 days of additional treatment, provided certain findings are made and procedures followed. When a petition is filed seeking that extended commitment, the individual is entitled to a jury trial and representation by appointed counsel. (Welf. & Inst. Code, §§ 5300-5303.1.) The confinement may be extended for another 180 days by means of a further petition. (Welf. & Inst. Code, § 5304.)

The MDO Law itself makes reference to the LPS Act as an option, stating, "Before releasing any inmate or terminating supervision of any parolee who is a danger to self or others, or gravely disabled as a result of mental disorder and who does not come within the provisions of Section 2962, the Director of Corrections may, upon probable cause, place, or cause to be placed, the person in a state hospital pursuant to the Lanterman-Petris-Short Act . . . ." (Pen. Code, § 2974.) Finally, a third statutory scheme dealing specifically with potentially dangerous mentally ill inmates in need of treatment is the SVP Act, which we have already described in considerable detail.

■ As we have stated, although the Legislature has vested the Board with broad power both to impose conditions of parole and to revoke parole, it has also decreed that the Board has no discretion to withhold parole to a prisoner who has served a determinate term. Admittedly no statute expressly precludes parole revocation prior to release based solely on concerns about an inmate's mental condition and need for psychiatric treatment. Nevertheless, the Legislature has directly addressed the public safety and treatment concerns such individuals present by supplementing the LPS Act with the MDO Law and the SVP Act. Each of those acts applies to a precisely defined category of individuals, prescribes a detailed sequence of evaluations and procedures that must be followed, and affords the affected individuals mandatory procedural safeguards, including the right to a jury trial, before civil commitment can occur. When considered together with Penal Code section 3000, subdivision (b)(1), the mandatory parole release provision of the determinate sentencing law, these statutes impliedly reflect a legislative choice to require the Department and the Board to utilize one of these acts when confronted with the problem of the potentially dangerous mentally disordered inmate. Because the Legislature has so fully occupied the subject matter, we conclude that the Board's utilization of the expedient of parole revocation under section 2616(a)(7) instead of civil commitment for the mentally disordered inmate who is about to be released into the community on parole is unauthorized.

But our conclusions about legislative intent are not based solely on inferences from the nature of the determinate sentencing law and the existence of these complex civil commitment statutes. The available legislative history of the MDO Law and the SVP Act corroborates that the Board exceeded its authority when it revoked Whitley's parole based on section 2616(a)(7).

The MDO Law was added to the Penal Code by Senate Bill No. 1296 (1985-1986 Reg. Sess.) enacted as, Statutes 1985, chapter 1419. According to material prepared for the Assembly's third reading of Senate Bill No. 1296, it was seen as necessary by its author (Sen. McCorquodale) because there was "no useful procedure" for assuring mental health treatment for prisoners following their determinate sentence when their mental disorder was a factor in their commission of a violent crime. (Assem. 3d reading analysis of Sen. Bill. No. 1296 (1985-1986 Reg. Sess.) as amended Aug. 30, 1985, p. 2.)[9] Material prepared for the Senate's third reading of the bill includes the Attorney General's argument in support of the bill that it "addresses a serious loophole in California's current determinate sentencing procedures which leave officials virtually helpless to avoid releasing prisoners who still pose a serious risk to society." (Sen. Rules Com., 3d reading analysis of Sen. Bill No. 1296 (1985-1986 Reg. Sess.).) A September 16, 1985, letter from the bill's author to the Governor, urging his approval, explains, "Under current law, there is little that can be done about the release from prison of persons who have a serious mental illness even though they were convicted for a crime involving violence. Such people desperately need treatment and their unrestricted release to the community poses a grave threat to the public safety. SB 1296 addresses this critical problem by establishing a pioneering new procedure for mental health commitment." No mention is made in these materials of the possibility of avoiding the release of such persons simply by revoking their parole for psychiatric treatment while they still are in custody.

Even more telling is the history of the SVP Act, which originated with Senate Bill No. 1143 (1995-1996 Reg. Sess.) enacted as Statutes 1995, chapter 762, and Assembly Bill No. 888 (1995-1996 Reg. Sess.) enacted as Statutes 1995, chapter 763. Committee reports consistently indicate that Senate Bill No. 1143 was seen as necessary by its author (Senator Mountjoy), because "[u]nder current law, there is no legal authority to detain and treat sexually violent offenders who are likely to commit new offenses because of their mental abnormality and defects. There is no procedure to prevent the

---

[9] We recognize that courts ordinarily do not consider statements of personal belief or intent by individual legislators, including the author of a bill, on the issue of legislative intent. But a legislator's statement may be entitled to consideration when it is a reiteration of legislative discussion and events leading to adoption of legislation or when it gives some indication of arguments made to the Legislature. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 700-701 [170 Cal.Rptr. 817, 621 P.2d 856].)

*release into unsuspecting communities of sexually violent offenders who have completed their prison sentences.* SB 1143 establishes civil commitment procedures for the placement and treatment of sexually violent offenders in a secure mental health facility following their release from prison." (Sen. Com. on Crim. Proc., Rep. on Sen. Bill No. 1143 (1995-1996 Reg. Sess.); Sen. Rules Com., Rep. on Sen. Bill No. 1143 (1995-1996 Reg. Sess.) as amended May 30, 1995, italics added.) Committee reports on Assembly Bill No. 888 include similar statements, stating that according to the author of the bill, "As a result of determinate sentencing, sex offenders are now automatically released from prison at the end of their terms. . . . The law compels the release of about 250 of these inmates a month . . . . [¶] Under current law, there is no legal authority to detain and treat sexually violent offenders who, because of a mental abnormality or personality disorder, are likely to re-offend once released from prison. Likewise; there is no current way to prevent their release into society." (Sen. Com. on Crim. Proc., Rep. on Assem. Bill No. 888 (1995-1996 Reg. Sess.) as amended May 31, 1995; Assem. Com. on Public Safety, Rep. on Assem. Bill No. 888 (1995-1996 Reg. Sess.) as amended Apr. 17, 1995.)[10]

This legislative history confirms our conclusion that the Board's revocation of Whitley's parole for psychiatric treatment based on section 2616(a)(7) was an act in excess of its statutory authority. We emphasize that our conclusion concerning the Board's use of the regulation is narrow. As we have already discussed, the Board has discretion in an appropriate case to require psychiatric treatment as a condition of parole. The Board may revoke the parole of a parolee whose conduct indicates that he or she has violated such a condition; it may also revoke parole based on conduct indicating that the parolee's mental condition has deteriorated such that he is likely to repeat the criminal conduct that initially resulted in his conviction. (See *In re Naito, supra*, 186 Cal.App.3d at pp. 1661-1662.) But the Legislature has not authorized the Board to hold a prisoner who has served a determinate term beyond his release date and then revoke his parole before he is released into the community, based solely on a determination that he has a mental disorder and is in need of psychiatric treatment within the meaning of section 2616(a)(7).

Finally, our conclusion makes it unnecessary to consider whether the Board violated Penal Code section 3057 because Whitley has been confined

---

[10]Both bills were enacted by the Legislature and approved by the Governor, resulting in duplicative legislation. (Stats. 1995, chs. 762, 763.) The version of the SVP Act added by chapter 762 of the Statutes of 1995 was repealed in 1997 by legislation amending, renumbering, or repealing many code sections. (Stats. 1997, ch. 17, § 151.) The Legislative Counsel's Digest explains that the legislation was necessary to maintain the codes and did not make any substantive change in the law.

for more than 12 months based on the same grounds. Nor is it necessary to consider any of the constitutional issues discussed by the parties and by amici curiae.

## DISPOSITION

The alternative writ is discharged and the stay previously imposed shall remain in effect until the remittitur issues. The petition for a peremptory writ is denied.

Stein, J., and Swager, J., concurred.