182 Cal.App.4th 797 (2010)
105 Cal. Rptr. 3d 871
In re DAVID LUCAS on Habeas Corpus.
No. C062809.
Court of Appeals of California, Third District.
March 5, 2010.
*802 Richard A. Ciummo & Associates, Jonathan Richter and Richard H. Kohl for Petitioner David Lucas.
Edmund G. Brown, Jr., Attorney General, Michael P. Farrell, Assistant Attorney General, Jeffrey D. Firestone and Jennifer M. Poe, Deputy Attorneys General, for Respondent State of California.

OPINION
ROBIE, J.
In this habeas corpus proceeding, petitioner David Lucas claims that when the Placer County District Attorney filed the petition to commit him as a sexually violent predator in November 2008, he was not in the lawful custody of the Department of Corrections and Rehabilitation (corrections) because the Board of Parole Hearings (the board) had extended his custody for 45 days under Welfare and Institutions Code[1] section 6601.3 without the showing of good cause required by that statute. We agree. As Lucas argues, the definition of good cause contained in subdivision (d) of section 2600.1 of title 15 of the California Code of Regulations (regulation 2600.1(d)) is inconsistent with the legislative intent behind the statutory good cause requirement. Thus, to the extent the board relied on the regulation in extending Lucas's incarceration, Lucas's custody was unlawful.
As we will explain, however, this conclusion does not entitle Lucas to any relief. Because Lucas has not carried his burden of proving otherwise, we must conclude the board did, in fact, rely on regulation 2600.1(d) in placing the 45-day hold on Lucas. Furthermore, although we conclude the regulation's formulation of good cause is inconsistent with the governing statute, the regulation was apparently valid when the board relied on it. Under subdivision (a)(2) of section 6601 (section 6601(a)(2)), a petition to commit a person as a sexually violent predator cannot be dismissed on the ground the person's custody was unlawful if the unlawful custody was the result of a good faith mistake of fact or law. That is the case here. The board's presumptive reliance on regulation 2600.1(d) constitutes a good faith mistake of law. Accordingly, we will deny Lucas's petition.

FACTUAL AND PROCEDURAL BACKGROUND
Lucas was in prison serving a seven-year determinate sentence for failing to register as a sex offender and was scheduled to be released on parole on *803 October 12, 2008. On December 21, 2007well in advance of his parole release datecorrections personnel completed a sexually violent predator screening and determined that Lucas met the criteria as a potential sexually violent predator. Nothing further happened, however, until October 1, 2008-11 days before his parole release datewhen the screening form was received by corrections's classification services unit.
Unable to make a final determination based on available documentation, corrections referred the matter to the board the next day. On October 7, the board referred the matter to the State Department of Mental Health (mental health) for assessment. On October 9, a psychiatrist conducted a level II screening and referred the matter for a level III evaluation. It was now only three days before Lucas's release date.
The same day the matter was referred for a level III evaluation, the board placed a 45-day hold on Lucas pursuant to section 6601.3 "to facilitate full [sexually violent predator] evaluations to be concluded by [mental health]." Consequently, Lucas's release date was extended to November 26, 2008.
During the period of the hold, four psychologists evaluated Lucas; three of them concluded he met the sexually violent predator criteria. On November 17, mental health sent a letter to the Placer County District Attorney recommending that Lucas be committed as a sexually violent predator. The district attorney filed a commitment petition on November 20. On November 26, the court found the petition was sufficient to support a finding of probable cause to believe Lucas is a sexually violent predator and set a probable cause hearing for December 3.
On December 3, Lucas waived time for the probable cause hearing. In April 2009, he moved to dismiss the petition on the ground that the late completion of the screening and evaluation process had resulted in constitutional and statutory violations. As pertinent here, Lucas argued there was no showing of good cause to keep him in custody beyond October 12, 2008, pursuant to section 6601.3 and his unlawful custody was not the result of a good faith mistake of law or fact.
In opposition to the motion to dismiss, the district attorney argued it was up to the board to determine whether there was good cause to extend Lucas's custody under section 6601.3 and the board acted well within its statutory authority. In the district attorney's view, good faith mistake of law or fact was not an issue because there was no unlawful custody.
*804 In denying Lucas's motion, the court did not expressly conclude that the board had good cause to place a 45-day hold on Lucas pursuant to section 6601.3, but stated generally that it did "not find ... any violation of a statutory procedure in what was done here.... [E]very stage of the process was within the defined statutory periods."
On May 6, 2009, further proceedings on Lucas's commitment as a sexually violent predator were stayed to allow him to seek writ review. In June 2009, Lucas filed a habeas corpus petition in the appellate division of the superior court. As pertinent here, in denying Lucas's petition the court concluded that "[a]lthough [corrections] waited until the last minute, the fact remains that the process was completed within the statutory framework."
On September 3, 2009, Lucas commenced the present proceeding by filing a habeas corpus petition in this court. Following receipt of the People's opposition, we directed that an order to show cause issue "limited to the claim that [Lucas]'s extended commitment under Welfare & Institutions Code section 6601.3 was unlawful because there was no `showing of good cause' as required by this statute."

DISCUSSION

I

Legal Principles
(1) "The [Sexually Violent Predator Act (§ 6600 et seq.) (the act)] provides for the involuntary civil commitment of an offender immediately upon release from prison if the offender is found to be [a sexually violent predator]. [Citation.] The [act] `was enacted to identify incarcerated individuals who suffer from mental disorders that predispose them to commit violent criminal sexual acts, and to confine and treat such individuals until it is determined they no longer present a threat to society.' [Citations.] [A sexually violent predator] is defined as `a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.' (§ 6600, subd. (a)(1).)" (Lee v. Superior Court (2009) 177 Cal.App.4th 1108, 1122 [99 Cal.Rptr.3d 712].)
The commitment process under the act (Sexually Violent Predator Act) begins when the secretary of corrections "determines that an individual who is in custody under the jurisdiction of ... Corrections ..., and who is either serving a determinate prison sentence or whose parole has been revoked, may *805 be" a sexually violent predator. (§ 6601, subd. (a)(1).) When that happens, the secretary must "refer the person for evaluation in accordance with this section" "at least six months prior to that individual's scheduled date for release from prison."[2] (§ 6601, subd. (a)(1).)
The first step in the evaluation process is a preliminary "screening" performed by corrections and the board "based on whether the person has committed a sexually violent predatory offense and on a review of the person's social, criminal, and institutional history." (§ 6601, subd. (b).) "If as a result of this screening it is determined that the person is likely to be a sexually violent predator, ... Corrections ... shall refer the person to ... Mental Health for a full evaluation of whether the person meets the criteria in Section 6600." (§ 6601, subd. (b).)
(2) During the "full evaluation" conducted by mental health, the person is evaluated by two psychologists or psychiatrists. (§ 6601, subds. (b) & (d).) If after examining the person both professionals agree he or she "has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody," a commitment petition may be filed. (§ 6601, subds. (d) & (i).) When there is a split of opinion between the evaluators, independent professionals are brought in to evaluate the person, and a petition may be filed only if both independent evaluators believe he or she meets the sexually violent predator criteria. (§ 6601, subds. (e) & (f).)
"Upon a showing of good cause, the Board ... may order that a person referred to ... Mental Health pursuant to subdivision (b) of Section 6601 remain in custody for no more than 45 days beyond the person's scheduled release date for full evaluation pursuant to subdivisions (c) to (i), inclusive, of Section 6601." (§ 6601.3.) A petition to commit a person as a sexually violent predator may be filed only "if the individual [i]s in custody pursuant to his or her determinate prison term, parole revocation term, or a hold placed pursuant to Section 6601.3, at the time the petition is filed." (§ 6601(a)(2).)
(3) While section 6601 requires actual custody to file a sexually violent predator petition, "lawful custody has never been a jurisdictional prerequisite to filing [a] petition ..." under the act. (People v. Wakefield (2000) 81 Cal.App.4th 893, 898 [97 Cal.Rptr.2d 221], italics added; see also People v. Superior Court (Small) (2008) 159 Cal.App.4th 301, 306-307 [71 Cal.Rptr.3d 462].) Thus, the fact that a person was unlawfully in custody at the time the petition was filed does not necessarily preclude or invalidate proceedings on *806 the petition. The act specifically provides that "[a] petition shall not be dismissed on the basis of a later judicial or administrative determination that the individual's custody was unlawful, if the unlawful custody was the result of a good faith mistake of fact or law." (§ 6601(a)(2).) "This necessarily implies that the petition should be dismissed if the unlawful custody was not the result of a good faith mistake." (People v. Badura (2002) 95 Cal.App.4th 1218, 1224 [116 Cal.Rptr.2d 336].)
With these principles in mind, we turn to Lucas's arguments.

II

Good Cause Under Section 6601.3
Lucas contends he "was ... not in the lawful custody of [corrections] at the time the [sexually violent predator] petition was filed November 20, 2008" because the section 6601.3 hold was placed on him "without a showing of good cause." We agree.
(4) Under section 6601.3, the board may extend a person's custody for no more than 45 days so that mental health can complete a full sexually violent predator evaluation, but only "[u]pon a showing of good cause." The question before us is what constitutes "good cause" for such an extension and whether it was shown here.
Pointing to the form the board used to issue the 45-day hold, Lucas notes that "[n]o ... reason or explanation for the hold is given" except for the board's statement that the purpose of the hold was "to facilitate full [sexually violent predator] evaluations to be concluded by" mental health. From this, Lucas argues that the board imposed the hold "simply because [corrections] neglected to complete the screening process and refer the case to [mental health] earlier." In Lucas's view, "[t]o interpret Section 6601.3 to mean that good cause exists for a 45-day extension of custody in every case where a full [sexually violent predator] evaluation has not been completed prior to the person's release date would be to render the [good cause requirement] surplusage, in violation of the rules of statutory construction."
The People argue that giving the term a "common sense meaning" and a "straightforward interpretation," "Good cause exists if the person in custody may be" a sexually violent predator. In support of this argument, the People point to regulation 2600.1(d), which provides in pertinent part as follows:
"[G]ood cause to place a 45-day hold pursuant to Welfare and Institutions Code section 6601.3 exists when either the inmate or parolee in revoked status is found to meet all the following criteria:
*807 "(1) Some evidence that the person committed a sexually violent offense by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, or threatening to retaliate in the future against the victim or any other person on, before, or after January 1, 1996, which resulted in a conviction or a finding of not guilty by reason of insanity of one or more felony violations of the following Penal Code Sections: 261, 262, 264.1, 269, 286, 288, 288(a), 288.5, 289 or any felony violation of sections 207, 209 or 220, committed with the intent to commit a violation of sections 261, 262, 264.1, 286, 288, 288a, or 289. The preceding felony violations must be against one or more victims.
"If the victim of one of the felony violations listed above is a child under 14, then it is considered a sexually violent offense.
"A prior finding of not guilty by reason of insanity for an offense described in this subdivision, a conviction prior to July 1, 1977 for an offense described in this subdivision, a conviction resulting in a finding that the person was a mentally disordered sex offender, or a conviction in another state for an offense that includes all of the elements of an offense described in this subdivision, shall also be deemed to be a sexually violent offense, even if the offender did not receive a determinate sentence for that prior offense.
"(2) Some evidence that the person is likely to engage in sexually violent predatory criminal behavior."
(5) Regulation 2600.1(d) draws from the statutory definition of a sexually violent predator in section 6600. As we have noted, subdivision (a)(1) of section 6600 defines a sexually violent predator as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).) Paragraph (1) of regulation 2600.1(d) defines a sexually violent offense in substantially the same terms as subdivisions (a)(2) and (b) of section 6600. Paragraph (2) of regulation 2600.1(d) incorporates the requirement of subdivision (a)(1) of section 6600 that the person is likely to engage in sexually violent predatory criminal behavior. Thus, under the regulation, good cause to issue a 45-day hold exists when the board finds there is some evidence the person being evaluated (or to be evaluated) was convicted of a sexually violent offense and is likely to engage in sexually violent predatory criminal behavior.[3]
*808 In response to the People's reliance on regulation 2600.1(d), Lucas contends (1) the board "did not make a finding of cause, even as good cause is defined in [the regulation]," and (2) in any event the regulation is invalid because it is inconsistent with the underlying legislative purpose of the statutory good cause requirement.
We will explain in part III of our Discussion why we must presume the board did, in fact, rely on regulation 2600.1(d) in imposing the 45-day hold on Lucas. But for present purposes it is sufficient that we agree with Lucas on the latter point. A 45-day hold under section 6601.3 cannot be justified based on the definition of good cause contained in regulation 2600.1(d) because the regulation is inconsistent with the legislative intent behind the statutory good cause requirement.
(6) In determining what is required for "a showing of good cause" under section 6601.3, "We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] To determine legislative intent, we turn first, to the words of the statute, giving them their usual and ordinary meaning." (People v. Flores (2003) 30 Cal.4th 1059, 1063 [135 Cal.Rptr.2d 63, 69 P.3d 979].)
Unfortunately, "What is `good cause,' may be difficult to define with precision, since it must, in a great measure, be determined by reference to the particular circumstances appearing in each case." (Ex Parte Bull (1871) 42 Cal. 196, 199; see also Bartlett Hayward Co. v. Indus. Acc. Com. (1928) 203 Cal. 522, 532 [265 P. 195] ["What constitutes `good cause' depends largely upon the circumstances of each case. The term is relative."].) Good cause is a "`flexible phrase[], capable of contraction and expansion, and by construction, all meaning can be compressed out of [it] or [it] may be expanded to cover almost any meaning. Reducing [it] to a fixed, definite and rigid standard, if desirable, is necessarily difficult, if not impossible.'" (Cal. Portland Cement Co. v. Cal. Unemp. Ins. Appeals Board (1960) 178 Cal.App.2d 263, 272 [3 Cal.Rptr. 37].)
(7) Nonetheless, case law provides some general principles that are of assistance in applying the term here. "`When related to the context of [a] statute, "good cause" takes on the hue of its surroundings, and it... must be construed in the light reflected by its text and objectives.'" (Cal. Portland Cement Co. v. Cal. Unemp. Ins. Appeals Board, supra, 178 Cal.App.2d at p. 273.) "`Good cause' must be so interpreted that the fundamental purpose of the legislation shall not be destroyed." (Id. at p. 272.) Moreover, "`in *809 whatever context [it] appear[s], [good cause] connote[s], as [a] minimum requirement[], real circumstances, substantial reasons, objective conditions, palpable forces that operate to produce correlative results, adequate excuses that will bear the test of reason, just grounds for action, and always the element of good faith.'" (Id. at pp. 272-273.)
As we have noted, regulation 2600.1(d) provides that there is good cause for a 45-day hold if there is some evidence the person being evaluated (or to be evaluated) was convicted of a sexually violent offense and is likely to engage in sexually violent predatory criminal behavior. As the People suggest, regulation 2600.1(d) essentially provides that there is good cause for a hold if there is some evidence the person may be a sexually violent predator. The People contend interpreting the term good cause in this manner "would effectuate the Legislature's stated purpose in enacting the [act]," which, in short, is to identify, confine, and treat sexually violent predators until they no longer pose a threat to society. (See Stats. 1995, ch. 763, § 1, pp. 5921-5922.)
In our view, however, accepting this definition of good cause would not fully effectuate the legislative intent behind the act and instead would actually thwart some of the Legislature's intent. In the act, the Legislature struck a careful balance between the public's interest in being protected from sexually violent predators on the one hand and the liberty interests of the inmates who are suspected of being sexually violent predators on the other. Accepting the definition of good cause in regulation 2600.1(d) as valid would upset this balance.
(8) "The [act] was enacted to identify incarcerated individuals who suffer from mental disorders that predispose them to commit violent criminal sexual acts, and to confine and treat such individuals until it is determined they no longer present a threat to society." (People v. Allen (2008) 44 Cal.4th 843, 857 [80 Cal.Rptr.3d 183, 187 P.3d 1018], italics added.) In support of the act, the Legislature found and declared that sexually violent predators "can be identified while they are incarcerated" and "it is in the interest of society to identify these individuals prior to the expiration of their terms of imprisonment." (Stats. 1995, ch. 763, § 1, p. 5921, italics added.) Thus, the Legislature recognized it was in the public interest to identify inmates who are sexually violent predators before they are released from prison.
(9) Balanced against this public interest, however, are the interests of the inmates in ending their imprisonment as soon as otherwise provided by law. "When a defendant is serving an indeterminate prison term, the Board is vested with power to rescind or postpone his or her parole date for cause. *810 [Citations.] But under the determinate sentencing law, the Legislature has decreed that `[a]t the expiration of a term of imprisonment ... imposed pursuant to [Penal Code] Section 1170 or at the expiration of a term reduced pursuant to [Penal Code] Section 2931, if applicable, the inmate shall be released on parole for a period not exceeding three years, unless the parole authority for good cause waives parole and discharges the inmate from custody of the department.' (Pen. Code, § 3000, subd. (b)(1).) Describing this language as `a mandatory "kick-out" provision,' the Supreme Court has stated, `The Board ... has no discretion to grant or withhold parole to a prisoner who has served a determinate term.'" (Terhune v. Superior Court (1998) 65 Cal.App.4th 864, 873-874 [76 Cal.Rptr.2d 841].) Thus, when a parole release date has been set, the inmate has a legitimate liberty interest in actually being released from prison on that date.
Balancing the public interest in keeping sexually violent predators incarcerated with the private interests of inmates in being released from prison as soon as otherwise provided by law, the Legislature included provisions in the act aimed at ensuring prompt evaluation of potential sexually violent predators. Thus, the Legislature required that the referral for evaluation as a sexually violent predatorincluding both preliminary screening and, if warranted, full evaluationgenerally must be made "at least six months prior to th[e] individual's scheduled date for release from prison." (§ 6601, subd. (a)(1).) Presumably, the Legislature concluded this six-month period would be sufficient for (1) corrections and/or the board to conduct the preliminary screening; (2) mental health to conduct the full evaluation; (3) mental health to request the filing of a commitment petition; and (4) the district attorney or county counsel to file the petition. The Legislature apparently recognized, however, that that would not be the case every time. Thus, the Legislature enacted section 6601.3 to provide an additional 45 days, if necessary, to complete the processbut only on a showing of good cause for the extension.
With this in mind, the question becomes whether authorizing an extension of custody whenever there is some reason to believe the person being evaluated (or to be evaluated) may be a sexually violent predator is consistent with the intent behind the act. We think not.
(10) As a general matter, an exception to a general rule that requires good cause as its trigger is just thatan exceptionand should apply only in exceptional cases. (See Ex Parte Bull, supra, 42 Cal. at p. 199.) That an inmate being evaluated under the act as a potential sexually violent predator may be a sexually violent predator is hardly exceptional. As we have noted, the evaluation process is triggered only when the secretary of corrections *811 determines an inmate "may be a sexually violent predator." (§ 6601, subd. (a)(1).) Presumably this determination is not made arbitrarily, but instead is based on some evidence. (See In re Rosenkrantz (2002) 29 Cal.4th 616, 656-657 [128 Cal.Rptr.2d 104, 59 P.3d 174] [suggesting that a decision that is not based on "some evidence" would be "without any basis in fact" and thus "arbitrary and capricious"].) Similarly, a full evaluation is warranted only if the preliminary screening results in a determination that "the person is likely to be a sexually violent predator ...." (§ 6601, subd. (b).) Again, presumably this determination is not made arbitrarily but is based on some evidence.
What that means is that by the time a person has been referred to mental health for a full evaluation, it has been determined already, based on some evidence, that the person not only may be, but is likely to be, a sexually violent predator. If the board legitimately could find good cause for a 45-day hold under section 6601.3 based solely on a showing of some evidence that the person being evaluated (or to be evaluated) was convicted of a sexually violent offense and is likely to engage in sexually violent predatory criminal behavioras regulation 2600.1(d) permitsthen good cause for a hold would exist in every case referred for a full evaluation, and the exception would swallow the rule.
(11) That the good cause exception in section 6601.3 was not intended to apply in every case referred for a full evaluation is supported by the legislative history of the amendment that added the good cause requirement to section 6601.3. (Stats. 2000, ch. 41, § 1.) According to a committee analysis, the purpose of the amendment to section 6601.3 was to "clarif[y] that an inmate referred to the [sexually violent predator] process may be detained 45 days beyond the scheduled release date, in order to cover situations in which an inmate's release date may be unexpectedly moved up, or when a parole revocation term allows insufficient time to complete the evaluation process." (Assem. Com. on Appropriations, Analysis of Sen. Bill No. 451 (1999-2000 Reg. Sess.) Apr. 12, 2000, pp. 1-2, underscoring omitted.) Thus, the Legislature recognized that exceptional circumstances might make it impossible to complete a sexually violent predator evaluation before the inmate's scheduled release date, despite the best efforts of corrections, mental health, and the board to complete the evaluation within that time. That is why a provision allowing a 45-day hold for good cause was necessary. But good cause does not exist unless there is something exceptional about the casesomething that made it difficult or impossible to complete the evaluation within the normal timeframe.
*812 (12) Because regulation 2600.1(d) purports to allow a finding of good cause for a 45-day hold based solely on evidence that the inmate may be a sexually violent predator, and does not require a showing of exceptional circumstances that precluded the completion of the sexually violent predator evaluation within the normal timeframe, the regulation is invalid, as it is inconsistent with the legislative intent behind section 6601.3.
(13) "We recognize that the courts usually give great weight to the interpretation of an enabling statute by officials charged with its administration, including their interpretation of the authority vested in them to implement and carry out its provisions. [Citation.] But regardless of the force of administrative construction, final responsibility for interpretation of the law rests with courts. If the court determines that a challenged administrative action was not authorized by or is inconsistent with acts of the Legislature, that action is void. [Citation.]
"These principles apply to the rulemaking power of an administrative agency, which is limited by the substantive provisions of the law governing that agency. [Citations.] To be valid, an administrative regulation must be within the scope of the authority conferred by the enabling statute or statutes. [Citations.] No matter how altruistic its motives, an administrative agency has no discretion to promulgate a regulation that is inconsistent with the governing statutes." (Terhune v. Superior Court, supra, 65 Cal.App.4th at p. 873.)
Because the definition of good cause in regulation 2600.1(d) is inconsistent with the legislative intent behind section 6601.3, it cannot be used to justify the hold placed on Lucas. Furthermore, no excuse of any kind has been shown for why the evaluation of Lucas as a sexually violent predator could not have been completed in the normal timeframe. The original screening form was completed on December 21, 2007nearly 10 months before Lucas's parole release date. Nevertheless, it was not until October 1, 2008a mere 11 days before Lucas's parole release datethat the next step was taken, with the screening form being received by corrections's classification services unit. No reason for this delay has been shown. Accordingly, the showing of good cause required for a 45-day hold under section 6601.3 was never made, and the hold was unlawful.

III

Good Faith Mistake of Law Under Section 6601(a)(2)
The People contend that "if [Lucas] was not in lawful custody, his custody was the result of a good faith mistake of law" and therefore under section *813 6601(a)(2) he is not entitled to relief. In essence, the People contend the board acted in good faith in placing a 45-day hold on Lucas based on regulation 2600.1(d).
As we will explain, we agree with the People that Lucas is not entitled to relief if the board imposed the 45-day hold based on the regulation. We also conclude that because Lucas has not shown the board did not impose the hold based on the regulation, we must presume it did. Accordingly, Lucas is not entitled to habeas corpus relief despite the unlawfulness of the hold.
We begin our discussion of this issue with People v. Hubbart (2001) 88 Cal.App.4th 1202 [106 Cal.Rptr.2d 490]. In Hubbart, the defendant was released from prison in 1993, but "[a]bout a month and a half after his release, his parole was revoked for psychiatric treatment, pursuant to title 15, California Code of Regulations, section 2616, former subdivision (a)(7). The [sexually violent predator] petition was filed while he was in prison pursuant to that parole revocation, on January 2, 1996." (Hubbart, at pp. 1213-1214.)
In 1998, in Terhune an appellate court invalidated the regulation used to justify the revocation of Hubbart's parole. (People v. Hubbart, supra, 88 Cal.App.4th at p. 1227.) In 2000, Hubbart was committed as a sexually violent predator. (Id. at p. 1216.) On appeal from the order of commitment, in response to Hubbart's argument that his commitment was invalid because he was not in lawful custody at the time the commitment petition was filed, the appellate court noted that at the time his parole was revoked under the authority of the regulation later invalidated in Terhune "no judicial or administrative decision had addressed the validity of that regulation.... Thus, defendant has made no showing that his parole was revoked in bad faith." (Hubbart, at p. 1229.) The court later reiterated that "the error resulted from a mistake of law.... Corrections relied on a regulation that was apparently valid: at the time, there was no controlling judicial decision directly on point. The regulation was invalidated only after the petition for commitment was filed. There is no evidence of any negligence or intentional wrongdoing here." (Ibid.)
(14) Under Hubbart, then, the reliance of corrections on an apparently valid regulation that is only later determined to be invalid constitutes a good faith mistake of law. And section 6601(a)(2) precludes the dismissal of a sexually violent predator petition based on a claim of unlawful custody if the unlawful custody resulted from a good faith mistake of law.
Lucas contends his case is distinguishable from Hubbart because in his case "negligence on the part of [corrections] is precisely what caused the *814 problem. The hearing officer, on October 9, 2008, had only two options. Impose the 45-day holdwhether there was a legal basis to do so or notor simply allow the clock to run out and allow [Lucas] to be released. [¶] There is no evidence that `good cause,' either under section 6601.3 or [regulation] 2600.1 played any part in that decision."
We disagree with Lucas's analysis. The determination of whether Lucas's unlawful custody resulted from a good faith mistake of law does not depend on whether corrections was negligent in waiting until only 11 days before his parole release date to follow up on the initial screening form completed almost 10 months earlier. Whether corrections was negligent in that regard is pertinent only to whether there was good cause for placing the 45-day hold, as we have interpreted that term. We have concluded already that no good cause was shown.
In determining whether Lucas's unlawful custody resulted from a good faith mistake of law, two questions are pertinent: first, did the board rely on regulation 2600.1(d) in placing the 45-day hold on Lucas, and second, could the board reasonably have relied on the regulation in placing the hold. If the answer to both questions is "yes," then Lucas's unlawful custody was the result of a good faith mistake of law.
We begin with the second question. When the board placed the 45-day hold on Lucas in October 2008, there was no judicial or administrative decision that had addressed the validity of regulation 2600.1(d), and the regulation was, to all appearances, valid. Thus, the board could have relied in good faith on that regulation in placing the hold on Lucas.
That brings us to the other questionnamely, did the board rely on the regulation in placing the hold? Lucas contends there is no evidence the board relied on the regulation. He notes that the form used to place the hold contains no "reason or explanation for the hold" other than a statement that the hold was being placed to facilitate a full sexually violent predator evaluation by mental health. He further notes that "[t]he decision form does not contain a finding of good cause. Good cause is not even mentioned. [Regulation 2600.1(d)] is not even mentioned."
Just because the board did not say it was relying on regulation 2600.1(d), however, does not mean the board was not relying on the regulation. Furthermore, in a habeas corpus proceeding, the petitioner bears the burden of proving by a preponderance of the evidence the facts that establish a basis for relief. (In re Cox (2003) 30 Cal.4th 974, 997-998 [135 Cal.Rptr.2d 315, 70 P.3d 313].) Here, that means Lucas must show by a preponderance of the *815 evidence that the board was not relying on regulation 2600.1(d) when it placed the 45-day hold on him. Lucas has not made that showing.
Lucas contends the board did not rely on regulation 2600.1(d) in placing the hold because while "[t]he documents leading up to October 9, 2008"the day the hold was placed"clearly contain evidence that [he] had previously committed a sexually violent offense, or offenses, as required by [the regulation]," "[t]hey contain no evidence regarding the likelihood of his engaging in sexually violent predatory criminal behavior in the future, as [also] required by [the regulation]." Lucas admits that such evidence does appear "in the Level II Screen ..., which was conducted October 9, 2008, the same day the Board ... imposed the 45-day hold," because "[t]he Level II Screen contains the first assessment of [his] mental status, the first actuarial risk assessment, and the first consideration of additional risk factors." He also admits "it is possible the [board] hearing officer had the results of the Level II Screen available to him at the time he imposed the 45-day hold." He contends, however, that "the documents suggest otherwise" because "[t]he decision form states that [he] `meets the initial screening criteria,'" which in Lucas's estimation "appears to mean the `first level criteria' referred to in the documents dated October 2 and 7 ..., rather than the Level II Screen conducted the day the hold was placed."
In essence, Lucas asks us to infer that when the board, on October 9, 2008, placed the 45-day hold on him, it did not have before it any evidence that he was likely to engage in sexually violent predatory criminal behavior, even though such evidence was contained in the "Level II Screen" document completed that same day. And we should infer this, he contends, because the document placing the hold on him refers to him meeting "the initial screening criteria" as a sexually violent predator, which he takes to refer to criteria examined by corrections and the board before the "Level II Screen" was completed.
(15) We are not persuaded that the reference to "the initial screening criteria" in the document placing the hold on Lucas demonstrates that the board was not in possession of the "Level II Screen" when it decided to place the hold. Consequently, Lucas's chain of inferences fails, and as a result he has not persuaded us that the board did not rely on regulation 2600.1(d) in placing the hold. Because Lucas has not met his burden of proving the contrary, we must conclude that the board did, in fact, rely in good faith on that regulation. As a result, section 6601(a)(2) bars us from granting Lucas any relief, despite our conclusion that no good cause was shown for his extended imprisonment under section 6601.3.

*816 DISPOSITION
The order to show cause is discharged and the petition for writ of habeas corpus is denied.
Hull, Acting P. J., and Butz, J., concurred.
NOTES
[1] All undesignated section references are to the Welfare and Institutions Code.
[2] This six-month deadline does not apply "if the inmate was received by [corrections] with less than nine months of his or her sentence to serve, or if the inmate's release date is modified by judicial or administrative action." (§ 6601, subd. (a)(1).)
[3] Regulation 2600.1(d) lacks the element of a diagnosed mental disorder that is part of section 6600. Thus, to issue a 45-day hold the board does not have to find some evidence that the person is likely to engage in sexually violent predatory criminal behavior because of a diagnosed mental disorder. Instead, it is sufficient for purposes of issuing the hold that there is evidence the person, for whatever reason, is likely to engage in sexually violent predatory criminal behavior.