[No. G041511. Fourth Dist., Div. Three. Sept. 21, 2009.]

RICHARD ALLEN LEE, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest. [And four other cases.*]

*Semeneck v. Superior Court (No. G041523 [Super. Ct. Orange County, Nos. M9837, M10477 & M11240]); Rabuck v. Superior Court (No. G041524 [Super. Ct. Orange County, Nos. M10338 & M11029]); Morehead v. Superior Court (No. G041525 [Super. Ct. Orange County, No. M10439]); and Sabatasso v. Superior Court (No. G041526 [Super. Ct. Orange County, No. M11244]).

**COUNSEL**

Deborah A. Kwast, Public Defender, Thomas Havlena and Jean Wilkinson, Chief Deputy Public Defenders, Kevin J. Phillips and Denise Gragg, Assistant Public Defenders, and Robert F. Kohler, Deputy Public Defender, for Petitioners Richard Allen Lee, John Patrick Semeneck, Ross William Rabuck, Jr., Robert Eldred Morehead, and William Sabatasso.

No appearance for Respondent.

Tony Rackauckas, District Attorney, and Matthew Lockhart, Deputy District Attorney, for Real Party in Interest.

OPINION

FYBEL, J.—

## INTRODUCTION

The Orange County District Attorney's Office (the district attorney) initiated separate proceedings against Richard Allen Lee, John Patrick Semeneck, Ross William Rabuck, Jr., Robert Eldred Morehead, and William Sabatasso (collectively, defendants) by filing a petition against each defendant seeking his civil commitment as a sexually violent predator (SVP) under the Sexually Violent Predator Act (Welf. & Inst. Code, § 6600 et seq.) (SVPA). (All further statutory references are to the Welfare and Institutions Code unless otherwise specified.) The trial court denied defendants' respective (and essentially identical) motions to quash subpoenas duces tecum issued by the district attorney to Coalinga State Hospital (CSH), the California Men's Colony, and the "Health Records Center." The subpoenas sought a wide range of information including medical and psychological records, trust account information, and visitor logs.

Each defendant filed a petition for writ of prohibition/mandate in this court, arguing the trial court (1) exceeded its jurisdiction in ordering compliance with the subpoenas because they "lack[ed] affidavits showing specific facts justifying discovery as required by Code of Civil Procedure, section 1985"; (2) erred by ordering CSH to comply with future subpoenas duces tecum; (3) exceeded its jurisdiction by relieving CSH's medical staff of confidentiality obligations under the Health Insurance Portability and Accountability Act of 1996 (42 U.S.C. § 1320d et seq.) (HIPAA); and (4) erred by denying defendants' requests to review in camera documents produced pursuant to the subpoenas for privilege, prior to disclosure to the district attorney. We consolidated all five of defendants' petitions.

We grant defendants' petitions. Code of Civil Procedure section 1985, subdivision (b) requires that a subpoena duces tecum be served with an affidavit "setting forth in full detail the materiality" of the items sought by the subpoena. In *McClatchy Newspapers v. Superior Court* (1945) 26 Cal.2d 386, 396 [159 P.2d 944], the California Supreme Court expressed the now decades-old legal principle that such an affidavit cannot consist of reliance "merely upon the legal conclusion, stated in general terms, that the desired documentary evidence is relevant and material."

██ The subpoenas duces tecum are ineffective because each failed to include a declaration containing a sufficient statement of materiality as required by Code of Civil Procedure section 1985, subdivision (b). Thus, the

trial court erred by ordering CSH to comply with the issued subpoenas and with unspecified "future subpoena[s]" containing similar subject matters, and we will order the issuance of writs of mandate vacating those orders. We therefore do not need to decide whether the trial court erred by denying defendants' motions seeking to review subpoenaed documents in camera for privilege before their disclosure to the district attorney.

The district attorney "may obtain access to otherwise confidential treatment information" concerning an alleged SVP to the extent any such information is contained in an updated mental evaluation conducted under section 6603, subdivision (c). (*Albertson v. Superior Court* (2001) 25 Cal.4th 796, 807 [107 Cal.Rptr.2d 381, 23 P.3d 611] (*Albertson*).) Hence, the district attorney was entitled to a court order releasing CSH's medical staff from obligations under HIPAA to maintain the confidentiality of defendants' medical and psychological records as provided under section 6603, subdivision (c). Because the court's orders releasing CSH's medical staff from their confidentiality obligations under HIPAA are too broad, we order the issuance of writs of mandate vacating the trial court's orders pertaining to HIPAA and remand these matters to the trial court with directions to issue a tailored order in each case in accordance with section 6603, subdivision (c).

## BACKGROUND

### I.

#### PETITIONS FOR RECOMMITMENT AGAINST DEFENDANTS

In July 2005, the district attorney filed a petition against Lee for recommitment as an SVP. In July 2007, the district attorney filed a fourth petition against Lee for recommitment as an SVP. The petition alleged Lee was "presently an inmate at Coalinga State Hospital" and "his current commitment expires 8/26/07."

In February 2003, the district attorney filed a petition to extend commitment as an SVP against Semeneck. The petition alleged he was "an SVP committee at Atascadero State Hospital" with a commitment release date of March 22, 2003.

In October 2004, the district attorney filed a petition against Rabuck for recommitment as an SVP, which alleged he was "presently an SVP committee at Atascadero State Hospital" and had a commitment expiration date of October 30, 2004.

In January 2005, the district attorney filed a petition against Morehead for commitment as an SVP, and alleged he was, at the time of filing, an inmate of California's Department of Corrections and Rehabilitation with a parole date of February 14, 2005.

In March 2007, the district attorney filed a petition against Sabatasso for commitment as an SVP, and alleged he was "presently an inmate at the California Men's Colony (CMC) East in San Luis Obispo."

## II.

### The District Attorney Files Notices of Request for Release of Medical Records.

In each case, the district attorney filed a notice of request for release of medical records stating that it "will move the court for an order regarding medical/hospital/prison records" of defendant. In the supporting memorandum of points and authorities attached to each notice, the district attorney argued HIPAA impacted the district attorney's ability to obtain medical records for use in judicial proceedings. The district attorney further stated, "[t]he medical records are material and relevant because mental state is in direct issue in the pending proceeding. The prosecution is entitled to obtain those records because the public interest in protecting the health and safety of others outweighs the privacy interest of the patient in such records. [The patient's] medical records in the custody of the treater or facility named in the order will disclose material information regarding [the patient's] mental condition and are therefore of substantial value in the judicial proceedings. [The patient's] medical records . . . are necessary in the adjudication of the underlying petition." In each case, the district attorney requested a protective order.

## III.

### The District Attorney Files Motions for the Release of Records by CSH.

Citing section 6603, subdivision (c), in each case, the district attorney filed a motion for the release of records in which it sought an order requiring CSH "to release all records in their possession including medical records relevant to the determination of [defendant]'s status as a sexually violent predator. Included[,] but not limited to . . . , trust account records, visitation logs, package regarding [defendant]."

IV.

THE DISTRICT ATTORNEY FILES PROPOSED COURT ORDERS SEEKING
ENFORCEMENT OF SUBPOENAS DUCES TECUM.

In each defendant's case, the district attorney also issued four subpoenas duces tecum seeking the production of documents related to defendant and prepared proposed orders directing compliance with those subpoenas. We next describe each of those four subpoenas.

A.

*Subpoenas Directed to CSH Seeking Defendants' Medical
Records*

The district attorney issued civil subpoenas duces tecum directed to CSH, seeking the production of "[a]ny and all records relating to the treatment, diagnosis and evaluation" of each defendant, "including but not limited to any medical reports, evaluations, diagnosis, surgery, recovery, court reports, forensic reports, 90-day treatment plans, psychological reports, any and all notes, including but not limited to progress notes, psychiatric reports, social history reports, interdisciplinary records and notes, psychiatric technician notes, admission reports, discharge reports, written relapse prevention plan, and all psychological testing performed by or for your facility with contact information for the person(s) who conducted the testing."

The subpoenas were supported by declarations signed by the district attorney, which stated the requested documents were material to the issues involved in the cases and good cause existed for the production of the requested documents in order "[t]o assist in fair and effective presentation at trial of this matter."

B.

*Subpoenas Directed to CSH Seeking Nonmedical
Information Regarding Defendants, Including Trust Account
Information and Visitor Logs*

The district attorney issued a second civil subpoena duces tecum to CSH in each case, seeking production of "[v]isitor logs; activity logs; physical therapy session logs; patient arrival and departure logs; disciplinary records; mail arrival and departure logs; patient property requests; incoming patient property inventories; Cancel Package Waiver Forms; computer printout

record of all financial transactions with respect to [defendant]'s trust account; all deposit and withdrawal slips related to [defendant]'s trust account at Coalinga State Hospital."

The declaration in support of each subpoena stated: "Good cause exists for the production of the [requested] documents . . . for the following reasons: [¶] To prove that [defendant] is a sexually violent predator as described in Section 6600[, subdivision ](a) of the Welfare and Institutions Code. The above documentation is needed to assess any statements made by [defendant] to CSH personnel that may reflect on his credibility, current mental status, diagnosis, and likelihood to recidivate sexually." The declaration further stated the requested documents were material to the issues involved in the case "[t]o prove that [defendant] is a sexually violent predator as described in Section 6600[, subdivision ](a) of the Welfare and Institutions Code. The above documentation is needed to assess any statements made by [defendant] to CSH personnel that may reflect on his credibility, current mental status, diagnosis, and likelihood to recidivate sexually."

C.

*Subpoenas Directed to the California Men's Colony*

The district attorney also issued civil subpoenas duces tecum to the California Men's Colony, through which the district attorney sought the production of records pertaining to each defendant "while in custody or on parole under the jurisdiction of the California Department of Corrections and all documents forwarded to the CDC pertaining to [defendant] during that time period which remain in its possession." Each subpoena further stated the requested documents included defendant's " 'C' file, parole reports, chronological reports, disciplinary reports, legal reports, and BPH section."

Each subpoena stated: "Good cause exists for the production of the documents or other things described . . . for the following reasons: [¶] To prove that [defendant] remains a sexually violent predator as described in Section 6600[, subdivision ](a) of the Welfare and Institutions Code." Each subpoena also stated: "These documents or other things described . . . are material to the issues involved in this case for the following reasons: [¶] To prove that [defendant] remains a sexually violent predator as described in Section 6600[, subdivision ](a) of the Welfare and Institutions Code."

## D.

### *Subpoenas Directed to the Custodian of Records of the Health Records Center in Sacramento*

The district attorney issued civil subpoenas duces tecum to the custodian of records of the Health Records Center in Sacramento, which sought production of any and all medical records of each defendant "while in custody or on parole under the jurisdiction of the California Department of Corrections and all medical records forwarded to the CDC pertaining to [defendant] during that time period which remain in its possession." The subpoenas further stated the request included each defendant's " 'M' File, parole outpatient clinic records, psychological reports, psychiatric reports, medications and housing."

The subpoenas were supported by declarations stating: "Good cause exists for the production of the documents or other things . . . for the following reasons: [¶] To assist in fair and effective presentation at trial of this matter" and "[t]hese documents or other things . . . are material to the issues involved in this case for the following reasons: [¶] To assist in fair and effective presentation at trial of this matter."

## V.

### DEFENDANTS MOVE TO QUASH CSH SUBPOENAS SEEKING NONMEDICAL RECORDS.

Each defendant filed a motion to quash the subpoenas directed to CSH demanding the production of nonmedical records, arguing the subpoenas were ineffective because they lacked specificity as to the materiality of the requested documents and as to the district attorney's good cause for requesting them. All but Semeneck's motion also argued the district attorney's request that the court issue an order relieving all CSH medical staff of their obligations under HIPAA was improper. Semeneck asserted this latter argument in his response to the district attorney's reply brief; the district attorney does not contend Semeneck has waived this argument by failing to assert it in his moving papers.

## VI.

### ORDERS

The trial court denied defendants' motions to quash the subpoenas, granted the district attorney's motion to relieve CSH medical staff from confidentiality obligations under HIPAA relating to defendants, and granted the district attorney's request to enter the requested orders seeking the subpoenaed information as follows.

### A.

#### *Orders Directed to CSH for Release of Medical Records*

The trial court signed the following order in Lee's, Rabuck's, Morehead's, and Sabatasso's cases as to the CSH subpoenas seeking medical records: "[I]t is HEREBY ORDERED: [¶] A) that Coalinga State Hospital: [¶] 1) provide the documents identified in the Subpoena Duces Tecum attached as an exhibit to this order and incorporated herein by reference, by producing duplicate copies of all materials requested in the attached subpoena and providing them in the manner set forth therein by no later than the date set forth therein; [¶] 2) produce and provide all medical records of [defendant] requested in any future Subpoena Duces Tecum issued during the pendency of the current petition, and further, [¶] 3) permit doctors appointed by the Court to examine any and all medical records, charts, files, documents or notes related to the above named [defendant]. [¶] B) That all treating medical staff, physicians, and psychiatrists be released from any obligation under HIPAA and be allowed to speak to [the district attorney] regarding [defendant]. [¶] This is a continuing order and shall remain in effect until terminated by the Court. This order is issued in compliance with the provisions of HIPAA (45 CFR [§] 164.512(e)). Personal service of this Court Order is not required."

The court signed a substantively similar order in Semeneck's case, stating: "[I]t is HEREBY ORDERED: [¶] A) that Coalinga State Hospital: [¶] 1) provide the documents identified in the Subpoena Duces Tecum attached as an exhibit to this order and incorporated herein by reference, by producing duplicate copies of all materials requested in the attached subpoena and providing them in the manner set forth therein by no later than the date set forth therein; [¶] 2) produce and provide all medical records of [defendant] requested in any future Subpoena Duces Tecum issued during the pendency of the current petition, and further, [¶] 3) permit doctors appointed by the Court or either Counsel, to examine any and all medical records, charts, files, documents or notes related to [defendant]. [¶] B) That all treating medical staff, physicians, psychiatrists be released from any obligation under

HIP[A]A and allowed to speak to [the district attorney] regarding [defendant]'s psychiatric, psychological, medical, testing, condition, evaluation, diagnosis, treatment and observations of the [aforementioned]. [¶] This is a continuing order and shall remain in effect until terminated by the Court. This order is issued in compliance with the provisions of HIP[A]A (45 CFR [§] 164.512(e)). Personal service of this Court Order is not required."

## B.

### Orders Directed to CSH for Release of Nonmedical Records

The trial court signed the district attorney's proposed order in each case, regarding the CSH subpoenas seeking nonmedical information, stating: "[I]t is HEREBY ORDERED that Coalinga State Hospital: [¶] 1) produce and provide visitor logs relating to [defendant] in any future Subpoena Duces Tecum issued during the pendency of the current petition, and further, [¶] 2) produce and provide all trust account printouts and logs relating to [defendant] in any future Subpoena Duces Tecum issued during the pendency of the current petition including deposit and withdraw[al] slips. [¶] 3) patient arrival and departure logs; phone [r]ecords; disciplinary records; mail arrival and departure logs; patient property requests; incoming patient property inventories and Cancel Package Waiver Forms. [¶] This is a continuing order and shall remain in effect until terminated by the Court. Personal service of this Court Order is not required."

## C.

### Orders Directed to the Department of Corrections and Rehabilitation

As to the subpoenas directed to the California Men's Colony and the Health Records Center, the trial court issued the following order to release records in each case: "TO: CUSTODIAN OF RECORDS, DEPARTMENT OF CORRECTIONS AND REHABILITATION: [¶] YOU ARE HEREBY ORDERED TO RELEASE to the Orange County District Attorney's Office any and all records of [defendant]. Said records to include but are not limited to the following: Any and all records generated pertaining to the inmate while in custody or on parole under the jurisdiction of the California Department of Corrections and all documents forwarded to the CDC pertaining to the inmate during those time periods which remain in its possession. This would include (but is not limited to) the following: the inmate's 'M' File, Parole Outpatient Clinic Records, psychological reports, and psychiatric reports and medical records."

## D.

### *Protective Orders*

In each case, the trial court issued a protective order stating in part: "Any party receiving medical records in conjunction with the above entitled case is prohibited from using or disclosing the protected health information for any purpose other than litigation or proceedings relating to [defendant] for which such information was requested."

## VII.

### TRIAL COURT DENIES HEARING ON MOTIONS FOR IN CAMERA REVIEW OF SUBPOENAED DOCUMENTS.

Each defendant filed a motion requesting the opportunity to review in camera the documents produced in response to the court's orders to determine whether any such documents contained privileged information. The trial court denied defendants' motions and stayed the proceedings to enable defendants to file writ petitions.

## VIII.

### DEFENDANTS FILE PETITIONS FOR WRIT OF PROHIBITION/MANDATE AND REQUESTS FOR IMMEDIATE STAY OF PROCEEDINGS; PETITIONS ARE SUMMARILY DENIED BY THIS COURT.

In January 2009, defendants each filed a petition seeking a writ of prohibition/mandate and an order to immediately stay the proceedings, arguing the trial court (1) exceeded its jurisdiction in ordering compliance with the subpoenas duces tecum that lacked affidavits showing the materiality of the requested discovery and good cause for seeking it as required by Code of Civil Procedure section 1985; (2) erred by directing CSH to comply with future subpoenas duces tecum; (3) exceeded its jurisdiction by relieving CSH medical staff of HIPAA obligations relating to defendants; and (4) erred by denying defendants' requests for in camera inspection of subpoenaed documents to review for privileged and private information before disclosure to the district attorney.

This court summarily denied defendants' petitions and requests for an immediate stay.

## IX.

### California Supreme Court Grants Defendants' Petitions for Review.

In February 2009, defendants filed separate petitions for review. On February 25, the California Supreme Court issued an en banc order in each case, stating the following: "The petition for review is granted. [¶] The matter is transferred to the Court of Appeal, Fourth Appellate District, Division Three, with directions to vacate its order denying prohibition/mandate and to issue an alternative writ to be heard before that court when the proceedings are ordered on calendar. [¶] The Orange County Superior Court's order of disclosure, entered on October 7, 2008 and stayed until February 27, 2009 . . . is hereby stayed pending further order of the Court of Appeal, insofar as the order authorizes the release of information, other than medical and psychological records specified in Welfare and Institutions Code section 6603, subdivision (c) and *Albertson v. Superior Court* (2001) 25 Cal.4th 796, 805."

## X.

### This Court Issues Alternative Writs.

On March 4, 2009, this court issued an alternative writ in each case, stating in relevant part:

"On February 25, 2009, the California Supreme Court transferred this matter to this Court with directions to vacate our order denying prohibition/mandate and to issue an alternative writ to be heard before this Court when the proceedings are ordered on calendar. The Supreme Court further stayed the superior court's order of disclosure entered October 7, 2008, pending further order of this Court.

"Accordingly, this Court's order of January 27, 2009, denying the petition for prohibition/mandate is VACATED.

"GOOD CAUSE APPEARING, let an alternative writ of prohibition/mandate issue directing respondent superior court to vacate and set aside its order of October 7, 2008, releasing any documents that have been received by the court in response to the court orders of October 7, 2008, in the SVPA commitment proceeding against petitioner, or to SHOW CAUSE before this court at a time and date to be announced why a writ of prohibition/mandate should not issue commanding same.

"Petitioners shall have an alternative writ of mandate issued and served no later than March 9, 2009.

"If the superior court chooses to comply with the alternative writ, it shall notify this court of that fact no later than March 19, 2009.

"If the superior court chooses not to comply with the alternative writ, real party in interest shall serve and file his return by April 1, 2009, and petitioners . . . may file a traverse by April 16, 2009.

". . . The stay issued by the Supreme Court remains in effect pending further order of this Court."

The trial court did not comply with the alternative writs, and the district attorney filed its returns. On our own motion, we consolidated all five cases. We heard oral argument on June 16, 2009.

## DISCUSSION

### I.

#### OVERVIEW OF THE SVPA

The SVPA provides for the involuntary civil commitment of an offender immediately upon release from prison if the offender is found to be an SVP. (*People v. Yartz* (2005) 37 Cal.4th 529, 534 [36 Cal.Rptr.3d 328, 123 P.3d 604] (*Yartz*).) The SVPA "was enacted to identify incarcerated individuals who suffer from mental disorders that predispose them to commit violent criminal sexual acts, and to confine and treat such individuals until it is determined they no longer present a threat to society." (*People v. Allen* (2008) 44 Cal.4th 843, 857 [80 Cal.Rptr.3d 183, 187 P.3d 1018]; see *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1171 [81 Cal.Rptr.2d 492, 969 P.2d 584] [SVPA proceedings designed "to provide 'treatment' to mentally disordered individuals who cannot control sexually violent criminal behavior"].) An SVP is defined as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).)

" '[A]n SVPA commitment proceeding is a special proceeding of a civil nature, because it is neither an action at law nor a suit in equity, but instead is a civil commitment proceeding commenced by petition independently of a

pending action.' " (*Yartz, supra,* 37 Cal.4th at p. 536.)[1] "The process for confining an individual pursuant to the SVPA begins when the Secretary of the Department of Corrections and Rehabilitation determines that an individual in the custody of the department may be a sexually violent predator, and the secretary refers the individual to the State Department of Mental Health for an evaluation. If two evaluators concur that the individual meets the statutory criteria of a sexually violent predator, the Director of Mental Health shall request the county in which the person was convicted of the offense for which he or she is incarcerated to file a petition for commitment under the SVPA." (*People v. Allen, supra,* 44 Cal.4th at pp. 857–858.)

"If the trial court determines that the petition establishes 'probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release,' the court shall order a trial to determine whether the person is a sexually violent predator. [Citations.] . . . To secure the individual's commitment, the district attorney must prove beyond a reasonable doubt that the person is a sexually violent predator." (*People v. Allen, supra,* 44 Cal.4th at p. 858.)

## II.

### CIVIL DISCOVERY PERMITTED IN SVPA PROCEEDINGS; SCOPE OF APPROPRIATE DISCOVERY IN SVPA PROCEEDINGS IS LIMITED; APPLICABLE STANDARD OF REVIEW OF DISCOVERY ORDERS IS ABUSE OF DISCRETION.

Other than providing litigants access to medical and psychological records under section 6603, subdivisions (a) and (c)(1), discussed in detail *post,* the SVPA is silent as to discovery rights in such proceedings. General civil discovery methods, however, have been held to be available to litigants in SVPA proceedings. (See *Yartz, supra,* 37 Cal.4th 529, 537, fn. 4 [Civil Discovery Act of 1986[2] applies to an SVPA proceeding]; *People v. Superior Court (Cheek)* (2001) 94 Cal.App.4th 980, 983, 988 [114 Cal.Rptr.2d 760]

---

[1] In *Yartz, supra,* 37 Cal.4th at page 537, the Supreme Court disapproved *Leake v. Superior Court* (2001) 87 Cal.App.4th 675 [104 Cal.Rptr.2d 767] "[t]o the extent it suggests that an SVPA proceeding is a civil action."

[2] The Civil Discovery Act of 1986 was repealed and reenacted by the 2004 Civil Discovery Act (Code Civ. Proc., § 2016.010 et seq.) which took effect July 1, 2005. (*Biles v. Exxon Mobil Corp.* (2004) 124 Cal.App.4th 1315, 1326, fn. 7 [22 Cal.Rptr.3d 282].) Although the reenacted statutes comprising the Civil Discovery Act reflect extensive renumbering of the affected statutes, "[t]he changes [were] not intended to have any substantive effect on the law of civil discovery." (*Biles v. Exxon Mobil Corp., supra,* at p. 1326, fn. 7; see *Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare Consultants* (2007) 148 Cal.App.4th 390, 395 [55 Cal.Rptr.3d 751] [the 2004 Civil Discovery Act is codified at Code Civ. Proc., § 2016.010 et seq.].)

(*Cheek*) [holding civil discovery applies to SVPA proceedings and therefore deposition method of discovery is available].)

Here, defendants challenge the trial court's orders enforcing subpoenas duces tecum issued not under the Civil Discovery Act, but under Code of Civil Procedure section 1985. (See *Berglund v. Arthroscopic & Laser Surgery Center of San Diego, L.P.* (2008) 44 Cal.4th 528, 535 [79 Cal.Rptr.3d 370, 187 P.3d 86] [distinguishing "the statutory provisions governing subpoenas ([Code Civ. Proc.,] §§ 1985–1997)" from "the Civil Discovery Act ([Code Civ. Proc.,] § 2016.010 et seq.)"].) Defendants do not contend that a subpoena duces tecum is not an available discovery method in SVPA proceedings. We have not found any legal authority limiting the availability of civil discovery methods in SVPA proceedings, and there is no analytical basis for concluding subpoenas duces tecum are not available in such proceedings.[3]

■ "[T]he scope of discovery in SVPA proceedings is circumscribed by the two narrow issues presented at trial: (1) whether the person sought to be committed 'has been convicted of a sexually violent offense against two or more victims' [citation]; and (2) whether the person 'has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.' " (*Cheek, supra*, 94 Cal.App.4th at p. 983.) "[I]nformation relating to the proof of these issues is within the permissible scope of discovery in SVPA proceedings." (*Id.* at p. 990.)[4]

"The standard of review for a discovery order is abuse of discretion, because management of discovery lies within the sound discretion of the trial court. [Citation.] Thus, where there is a basis for the trial court's ruling and it is supported by the evidence, a reviewing court will not substitute its opinion for that of the trial court." (*Cheek, supra*, 94 Cal.App.4th at p. 987; see *People ex rel. Lockyer v. Superior Court* (2004) 122 Cal.App.4th 1060, 1071 [19 Cal.Rptr.3d 324] ["a trial court's ruling on a discovery motion 'will be

---

[3] In *Albertson, supra*, 25 Cal.4th at page 800, the district attorney had served a subpoena duces tecum seeking the defendant's mental health treatment files on a mental health facility where the defendant had been moved pending trial on an SVPA petition. The appellate court issued a writ of mandate ordering the trial court to deny the district attorney's requests. (25 Cal.4th at p. 801.) On review, the Supreme Court did not need to decide whether the appellate court had properly interpreted the SVPA because amendments to the SVPA (specifically, § 6603, subd. (c), discussed in detail *post*) had been enacted since the appellate decision and were dispositive of the issues presented on review. (*Albertson, supra*, at p. 803.) The district attorney's use of a subpoena duces tecum was not an issue in that case.

[4] "In SVPA proceedings, the primary purpose of discovery most likely will be to assist the parties in preparing for trial, and, to a lesser extent, to assist the parties in case evaluation and settlement." (*Cheek, supra*, 94 Cal.App.4th at p. 989.) These purposes are served in an SVPA proceeding when the information sought by civil discovery methods is relevant to the two narrow issues presented at trial. (94 Cal.App.4th at p. 989.)

overturned upon a prerogative writ if there is no substantial basis for the manner in which trial court discretion was exercised or if the trial court applied a patently improper standard of decision' "].)

## III.

### THE DISTRICT ATTORNEY IS EXPRESSLY ENTITLED TO CERTAIN MEDICAL AND PSYCHOLOGICAL REPORTS UNDER SECTION 6603, SUBDIVISION (c)(1).

■ As mentioned *ante*, under section 6603, subdivision (c), the district attorney in an SVPA proceeding "may obtain access to otherwise confidential treatment information concerning an alleged SVP to the extent such information is contained in an updated mental evaluation." (*Albertson, supra*, 25 Cal.4th at p. 807.)[5]

Section 6603, subdivision (c)(1) provides a district attorney an automatic right to certain medical and psychological records, as follows: "If the attorney petitioning for commitment under this article determines that updated evaluations are necessary in order to properly present the case for commitment, the attorney may request the State Department of Mental Health to perform updated evaluations. If one or more of the original evaluators is no longer available to testify for the petitioner in court proceedings, the attorney petitioning for commitment under this article may request the State Department of Mental Health to perform replacement evaluations. When a request is made for updated or replacement evaluations, the State Department of Mental Health shall perform the requested evaluations and forward them to the petitioning attorney and to the counsel for the person subject to this article. However, updated or replacement evaluations shall not be performed except as necessary to update one or more of the original evaluations or to replace the evaluation of an evaluator who is no longer available to testify for the petitioner in court proceedings. *These updated or replacement evaluations shall include review of available medical and psychological records, including treatment records, consultation with current treating clinicians, and interviews of the person being evaluated, either voluntarily or by court order.* If an updated or replacement evaluation results in a split opinion as to whether the person subject to this article meets the criteria for commitment, the State Department of Mental Health shall conduct two additional evaluations in accordance with subdivision (f) of Section 6601." (Italics added.)

---

[5] Section 6603, subdivision (a) provides that an alleged SVP "shall be entitled to a trial by jury, to the assistance of counsel, to the right to retain experts or professional persons to perform an examination on his or her behalf, *and to have access to all relevant medical and psychological records and reports.*" (Italics added.) Neither defendants' access to relevant medical records nor any other right under section 6603, subdivision (a) is an issue on appeal in this case.

In *Albertson, supra*, 25 Cal.4th at page 805, the Supreme Court interpreted section 6603, subdivision (c)(1) as providing "an exception to section 5328's[6] general rule of confidentiality of treatment records, and allows the district attorney access to treatment record information, *insofar as that information is contained in an updated evaluation*. To the extent there might be any ambiguity in this regard, the history described below confirms that in an SVPA proceeding a local government's designated counsel (here, the district attorney) may obtain, *through updated mental evaluations*, otherwise confidential information concerning an alleged SVP's treatment." (Italics added.)

The automatic nature of the district attorney's entitlement to mental and psychological records under section 6603, subdivision (c)(1) is underscored by the Supreme Court's order in each defendant's case in which the Supreme Court stayed the trial court's orders compelling the production of documents in compliance with the district attorney's subpoenas "insofar as the order authorizes the release of information, *other than* medical and psychological records specified in Welfare and Institutions Code section 6603, subdivision (c) and *Albertson v. Superior Court* (2001) 25 Cal.4th 796, 805." (First italics added.) Defendants have never challenged the district attorney's entitlement to such records.

## IV.

### Each of the District Attorney's Four Issued Subpoenas Duces Tecum Fails to Include an Affidavit Sufficiently Setting Forth the Materiality of the Records Sought.

Defendants contend the trial court "exceeded its jurisdiction in ordering compliance with subpoenas duces tecum that lack affidavits showing specific facts justifying discovery as required by Code of Civil Procedure, section 1985." Code of Civil Procedure section 1985 provides in relevant part: "(a) The process by which the attendance of a witness is required is the subpoena. It is a writ or order directed to a person and requiring the person's attendance at a particular time and place to testify as a witness. It may also require a witness to bring any books, documents, or other things under the witness's control which the witness is bound by law to produce in evidence. . . . [¶] (b) *A copy of an affidavit shall be served with a subpoena duces tecum issued before trial, showing good cause for the production of the*

---

[6] Section 5328 was enacted in 1972. (*Albertson, supra*, 25 Cal.4th at p. 800, fn. 3.) Section 5328 provides in part that "[a]ll information and records obtained in the course of providing services under . . . Division 6 (commencing with Section 6000) . . . to either voluntary or involuntary recipients of services shall be confidential." The SVPA, sections 6600 through 6609.3, was added to division 6 of the Welfare and Institutions Code in 1995. (*Albertson, supra*, at p. 800, fn. 3.)

*matters and things described in the subpoena, specifying the exact matters or things desired to be produced, setting forth in full detail the materiality thereof to the issues involved in the case, and stating that the witness has the desired matters or things in his or her possession or under his or her control."* (Italics added.)

■ In *McClatchy Newspapers v. Superior Court, supra,* 26 Cal.2d at page 396, the Supreme Court held an "affidavit in support of the demand for inspection must identify the desired books, papers and documents and it must clearly show that they contain competent and admissible evidence which is material to the issues to be tried. *The affiant cannot rely merely upon the legal conclusion, stated in general terms, that the desired documentary evidence is relevant and material."* (Italics added.) The Supreme Court further stated, "[w]hat has been said applies with equal force to defendant's attempt, by subpoena duces tecum, to inspect papers and documents in the hands of third parties." (*Id.* at p. 398.)

In *McClatchy Newspapers v. Superior Court, supra,* 26 Cal.2d at page 398, the affidavit supporting a subpoena duces tecum did not specifically describe any papers or documents, or their contents, but merely referred to various financial business transactions, and averred generally that the sought-after records were "relevant and material." The Supreme Court concluded: "It follows that defendant is not entitled, on the present showing, to compel an inspection of documents in the hands of plaintiff or the third parties, but it is entitled to a writ of mandate directing respondent to set aside its orders preventing the completion of plaintiff's deposition and to make the necessary orders to effectuate those proceedings in accordance with the views expressed in this opinion." (*Id.* at pp. 398–399.)

■ In *Johnson v. Superior Court* (1968) 258 Cal.App.2d 829, 835 [66 Cal.Rptr. 134], the appellate court stated: "The clear import of all the cases dealing with the subject is that a subpoena duces tecum has no force or effect if the affidavit required by [former] section 1985 of the Code of Civil Procedure does not comply with the provisions of that section. The requirement of that section that the affidavit must contain a showing of good cause for the production of the matters and things described in the subpoena and 'shall set forth in full detail the materiality thereof to the issues involved in the case' is not met by an affidavit which is totally devoid of any statement of facts." The court further stated, "to secure discovery by use of a subpoena duces tecum, there must be a showing of more than a wish for the benefit of all the information in the adversary's files . . ." (*id.* at p. 837), and " '[a] mere allegation that the records are material . . . constitutes a conclusion of law which does not meet the requirements' of [Code of Civil Procedure] section 1985" (*id.* at p. 836). The appellate court added, "the trial court must be

afforded the factual data by the required affidavit to enable it to make an informed ruling on the issues of materiality and good cause." (*Id.* at p. 837.)

In *Johnson v. Superior Court, supra,* 258 Cal.App.2d at page 837, the declaration supporting the subpoena duces tecum stated in part that the affiant believed that the documents sought by the subpoena " 'are material to the proper presentation of his case by reason of the following facts: They are necessary to prove the allegations in the Complaint. WHEREFORE affiant prays that Subpoena Duces Tecum issue.' " Concluding the declaration was insufficient, the appellate court explained: "This declaration fails to show any facts with reference to the alleged materiality of the desired documents either to the issues or to the subject matter of the litigation, and is devoid of any allegations whatever directed to the requirement of good cause. Similarly, we note that the entire declaration, such as it is, is based wholly on the declarant's alleged information and belief without any statement of supporting facts. Since the declaration is patently insufficient for the issuance of the subpoena duces tecum, which petitioner was charged with disobeying [citation], it was an abuse of the court's discretion to order petitioner to obey the subpoena." (*Ibid.*) The appellate court issued a writ commanding the trial court to vacate its order, accordingly. (*Id.* at p. 840; see also Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2009) ¶ 1:127, p. 1-32 (rev. # 1, 2005) [declaration supporting subpoena duces tecum must contain "specific facts" showing "[r]*elevance* to the subject matter (e.g., how the information contained in the documents tends to prove or disprove some issue in the case)" and cannot solely consist of a general legal conclusion of relevance and materiality].)

As discussed *ante,* the scope of permissible discovery in SVPA proceedings is limited to information relating to proof that the defendant is a person who has been convicted of a sexually violent offense against two or more victims and that the defendant has a diagnosed mental disorder that makes him or her a danger to the health and safety of others in that it is likely he or she will engage in sexually violent criminal behavior. (*Cheek, supra,* 94 Cal.App.4th at p. 983.) We now analyze each of the subpoenas issued by the district attorney, in light of these authorities, to determine whether each subpoena included an affidavit which set forth "in full detail the materiality thereof to the issues involved in the case" (Code Civ. Proc., § 1985, subd. (b)).

A.

*CSH Subpoenas Seeking Medical Records*

The trial court ordered CSH to comply with the subpoenas duces tecum which required CSH to produce "[a]ny and all records relating to the

treatment, diagnosis and evaluation" of each defendant. The declarations supporting the subpoenas stated: "Good cause exists for the production of the documents or other things . . . for the following reasons: [¶] To assist in fair and effective presentation at trial of this matter." The declarations further stated: "These documents or other things . . . are material to the issues involved in this case for the following reasons: [¶] To assist in fair and effective presentation at trial of this matter."

The district attorney's declarations solely state a legal conclusion that the documents requested are material to those proceedings, and lack any factual bases for their materiality. Therefore, they fail to comply with the requirements of Code of Civil Procedure section 1985. Thus, the subpoenas duces tecum have no force or effect. (*Johnson v. Superior Court, supra,* 258 Cal.App.2d at p. 837; *Pacific Auto. Ins. Co. v. Superior Court* (1969) 273 Cal.App.2d 61, 70 [77 Cal.Rptr. 836].)

Notwithstanding the ineffectiveness of the CSH subpoenas seeking medical records, as discussed *ante*, the Legislature has already deemed certain medical and psychological records material in SVPA proceedings through section 6603, subdivision (c). The district attorney's access to those records is not dependent upon the issuance of a subpoena duces tecum.

B.

*CSH Subpoenas Seeking Nonmedical Records*

In the CSH subpoenas seeking nonmedical information, the district attorney sought a variety of documents and information including visitor logs, activity logs, physical therapy session logs, patient arrival and departure logs, disciplinary records, mail arrival and departure logs, patient property requests, incoming patient property inventories, cancel package waiver forms, computer printout records of all financial transactions with respect to trust accounts, and all deposit and withdrawal slips related to defendants' trust accounts at CSH. The declaration in support of each CSH subpoena seeking such documents stated: "Good cause exists for the production of the [requested] documents . . . for the following reasons: [¶] To prove that [defendant] is a sexually violent predator as described in Section 6600[, subdivision ](a) of the Welfare and Institutions Code. The above documentation is needed to assess any statements made by [defendant] to CSH personnel that may reflect on his credibility, current mental status, diagnosis, and likelihood to recidivate sexually." The declaration further stated the requested documents were material to the issues involved in the case "[t]o prove that [defendant] is a sexually violent predator as described in Section 6600[, subdivision ](a) of the Welfare and Institutions Code. The above documentation is needed to assess any

statements made by [defendant] to CSH personnel that may reflect on his credibility, current mental status, diagnosis, and likelihood to recidivate sexually."

■ While those subpoenas' declarations included a fuller statement of materiality than the declarations supporting the CSH subpoenas seeking medical records, they failed to contain sufficient factual bases or explanations for the conclusion that all of those types of documents were material to the narrow issues presented in an SVPA proceeding. Satisfaction of the statutory requirement that the supporting affidavit assert a factual basis for materiality is particularly important here where the district attorney is seeking financial and other information defendants contend is protected by the right to privacy. (Cal. Const., art. I, § 1; *Binder v. Superior Court* (1987) 196 Cal.App.3d 893, 899 [242 Cal.Rptr. 231].) In the returns, the district attorney agrees defendants each have "a privacy interest in the items sought by the subpoenas." The trial court therefore erred by ordering CSH's compliance with the subpoenas seeking nonmedical information.

C.

*California Men's Colony Subpoenas*

The subpoenas to the California Men's Colony sought production of all records pertaining to each defendant "while in custody or on parole under the jurisdiction of the California Department of Corrections and all documents forwarded to the CDC pertaining to [defendant] during that time period which remain in its possession. This would include (but is not limited to) the following: [Defendant]'s 'C' file, parole reports, chronological reports, disciplinary reports, legal reports, and BPH section." The declarations supporting the subpoenas stated: "Good cause exists for the production of the documents or other things . . . for the following reasons: [¶] To prove that [defendant] remains a sexually violent predator as described in Section 6600[, subdivision ](a) of the Welfare and Institutions Code." As to materiality, the declarations similarly stated: "These documents or other things . . . are material to the issues involved in this case for the following reasons: [¶] To prove that [defendant] remains a sexually violent predator as described in Section 6600[, subdivision ](a) of the Welfare and Institutions Code."

Like the declarations supporting the CSH subpoenas, discussed *ante*, the declarations supporting the subpoenas to the California Men's Colony are insufficient for failing to provide factual statements of materiality in support of the broad set of documents they sought. The trial court therefore erred by ordering California's Department of Corrections and Rehabilitation to produce documents responsive to these subpoenas.

D.

### Health Records Center Subpoenas

The district attorney's subpoenas to the Health Records Center sought the production of any and all medical records pertaining to each defendant "while in custody or on parole under the jurisdiction of the California Department of Corrections and all medical records forwarded to the CDC pertaining to [defendant] during that time period which remain in its possession. This would include (but is not limited to) the following: [Defendant]'s 'M' File, parole outpatient clinic records, psychological reports, psychiatric reports, medications and housing."

Each subpoena was supported by a declaration, which stated: "Good cause exists for the production of the documents or other things . . . for the following reasons: [¶] To assist in fair and effective presentation at trial of this matter." The subpoena further stated: "These documents or other things . . .. are material to the issues involved in this case for the following reasons: [¶] To assist in fair and effective presentation at trial of this matter."

Again, the factual bases of materiality are lacking from the declarations supporting those subpoenas, rendering them ineffective. To the extent those subpoenas sought medical records available to the district attorney under section 6603, subdivision (c)(1), a subpoena was unnecessary.

E.

### Amended Subpoenas

The record contains the district attorney's reply briefs filed in support of its motions to enforce the subpoenas. In those briefs, the district attorney argued that its subpoenas were supported by sufficient declarations stating materiality in compliance with Code of Civil Procedure section 1985. The briefs each stated, "[t]he [defendant] argues, the four corners of the SDT [subpoena duces tecum] does not adequately address materiality and good cause because it is addressed in the brief. [The district attorney] respectfully submits new SDT's for the Court[']s review." Attached to the brief in each case are amended declarations each revised to contain a supplemental statement of good cause in support of each subpoena.

In each reply brief, the district attorney argued, "[e]ven if the Court does not believe that there is sufficient facts shown for good cause or materiality in the modified SDT, the Court can always order [the district attorney] to modify or allow the newly proffered SDT's to issue." The version of section

1987.1 of the Code of Civil Procedure in effect at the time of the court's order in 2008 provided: "When a subpoena requires the attendance of a witness or the production of books, documents or other things before a court, or at the trial of an issue therein, . . . the court, upon motion reasonably made by the party, the witness, any consumer . . . , or any employee . . . , or upon the court's own motion after giving counsel notice and an opportunity to be heard, may make an order quashing the subpoena entirely, modifying it, or directing compliance with it upon such terms or conditions as the court shall declare, including protective orders. In addition, the court may make any other order as may be appropriate to protect the parties, the witness, the consumer, or the employee from unreasonable or oppressive demands, including unreasonable violations of the right of privacy of the witness, consumer, or employee. . . . "

The record does not show the trial court was aware of those modified declarations before enforcing compliance with the subpoenas; the modified declarations were not discussed at the hearing on the motions to enforce the subpoenas and to quash the subpoenas.

Neither the district attorney nor defendants mention those amended subpoenas in their briefing before this court. In each return, the district attorney only generally argues the sufficiency of the declarations supporting its subpoenas, as follows: "[T]he People's assertion that the documents requested are necessary to determine whether [defendant] is likely to recidivate is an adequate statement of materiality as it relates to one of the two narrow issues present in an SVPA proceeding. Consequently, the superior court did not err in denying [defendant]'s motion to quash the subpoenas." Any argument the district attorney might have had regarding whether it had cured one or more of the deficient declarations has been forfeited.

V.

### The Trial Court Erred by Ordering CSH's Compliance with Future Subpoenas Duces Tecum.

Defendants contend the trial court "abused its discretion and acted without jurisdiction in ordering Coalinga State Hospital to comply with future subpoenas duces tecum." At the hearing on the enforcement of the subpoenas duces tecum, the following colloquy occurred:

"[Defendants' counsel]: And I also object, and also, you know, I also object to anything regarding the future, that future subpoenas will be automatically honored by Coalinga State Hospital. [¶] This court has no way of

knowing what is going to be in a future S.D.T. and this court should have—we should have consumer notice and a chance to object to—

"The Court: We are only dealing with current S.D.T.'s. If there are future ones, you will be able to contest them any time you want.

"[Defendants' counsel]: But, Your Honor, that is what the [district attorney] is asking for is that this court sign an order that all future S.D.T.'s are going to be honored.

"[The district attorney]: Not future. It's for medical records, Your Honor, covered by the code, specifically.

"The Court: Yes. There is no—all of the objections with regard to the issuance of the S.D.T.'s are determined now to be set aside and the professionals' responsibility under H.I.P.A.A., this lawsuit, exceeds their requirement of confidentiality, and they may speak to you, depending on their determination, and the court issues and orders the S.D.T. to go forward.

"[Defendants' counsel]: Is that the professional S.D.T., Your Honor?

"The Court: This one that is the subject of this litigation.

"[Defendants' counsel]: What about the future of the S.D.T.'s?

"[The district attorney]: The only thing that is covered is future medical records.

"The Court: Future medical. They will be allowed. There [are] no other S.D.T.'s at this time?

"[The district attorney]: I would ask the court [to] sign the court orders.

"The Court: The request is granted. I will do that today.

"[Defendants' counsel]: Your Honor, are you allowing all visitor logs; [¶] all mail arrival and departure logs; [¶] patient property requests; [¶] incoming property requests; [¶] deposit and withdrawal slips from the trust accounts and everything concerning the trust account?

"The Court: Yes. [¶] Was there another thing we need to talk about?

"[The district attorney]: I don't believe so.

"[Defendants' counsel]: I don't believe so.

"The Court: Thank you, folks." The court proceeded to enter the same order in all five cases.

In each case, the trial court signed an order which not only required CSH to produce medical records and treatment information pursuant to the subpoenas seeking medical records, but also to "produce and provide all medical records of [defendant] requested in any future Subpoena Duces Tecum issued during the pendency of the current petition." The court also signed an order requiring CSH to produce nonmedical records, including visitor logs and trust account information, and to "produce and provide all trust account printouts and logs relating to [defendant] in any future Subpoena Duces Tecum issued during the pendency of the current petition including deposit and withdraw[al] slips." The record does not contain any proposed future subpoenas or any discussion of what the district attorney might seek in such future subpoenas.

As discussed *ante*, the CSH subpoenas before the court were ineffective due to their failure to include declarations stating the factual basis of the materiality of the sought-after documents. By requiring CSH to comply with any *future* subpoenas the district attorney *might* issue pertaining to those specified topics, the trial court has excused the district attorney from satisfying the requirements of Code of Civil Procedure section 1985 and the requirement that the district attorney provide notice to the consumer before seeking personal records under Code of Civil Procedure section 1985.3. By directing compliance with such subpoenas and the timetables for production of requested documents set forth therein, the trial court has compromised defendants' ability to challenge the validity of such future subpoenas, including the scope, relevance, and good cause supporting them. The district attorney does not cite any legal authority supporting the trial court's action, and we have found none.

In each return, the district attorney argues the hearing transcript "makes clear that [defendant's] claim the court ordered compliance with non-existent future subpoenas is erroneous. The court specifically stated it was not ordering compliance with any mythical future subpoenas, but merely expected the professionals subject to the current subpoena to comply with their duty under Welfare and Institutions Code section 6603 and provide medical reports to the People as they became available. The medical records at issue have to be provided to the People pursuant to Welfare and Institutions Code section 6603 even without a subpoena. [Defendant]'s contention regarding future subpoenas is unfounded."

■ The court's comments expressing its intention to limit the district attorney's access to medical records and treatment information under section 6603, subdivision (c)(1) are inconsistent with the actual language in the orders requiring CSH to comply with future subpoenas seeking discovery of nonmedical records. Furthermore, in SVPA proceedings, the district attorney is automatically entitled to defendants' medical records and treatment information under section 6603, subdivision (c)(1), and thus subpoenas to obtain such information are unnecessary. Thus, section 6603, subdivision (c)(1) cannot justify the portions of the trial court's orders requiring compliance with future subpoenas.

The trial court erred by requiring CSH's compliance with future subpoenas duces tecum.

## VI.

### THE TRIAL COURT SHOULD HAVE ENTERED A NARROWLY TAILORED ORDER EXCUSING CSH'S MEDICAL STAFF FROM HIPAA REQUIREMENTS TO PERMIT THE DISTRICT ATTORNEY ACCESS TO WHICH IT IS ENTITLED UNDER SECTION 6603, SUBDIVISION (c).

■ Defendants argue the trial court exceeded its jurisdiction by ordering all medical staff, physicians, and psychiatrists relieved from any obligations under HIPAA as it relates to each of defendants. Through HIPAA, "Congress expressed its concern for protecting the integrity and confidentiality of personal medical records, and for preventing the unauthorized use or disclosure of such records." (*Bugarin v. Chartone, Inc.* (2006) 135 Cal.App.4th 1558, 1561 [38 Cal.Rptr.3d 505].) "Responding to the congressional mandate, DHHS [United States Department of Health and Human Services] promulgated comprehensive regulations to protect the privacy of personal medical records" (*id.* at p. 1562), including part 164 of title 45 of the Code of Federal Regulations (2005) which "governs the management and disclosure of medical records by 'covered entities' " and "*prohibits* the disclosure of protected health information without an authorization" (*Bugarin v. Chartone, supra*, at p. 1562).

An exception for disclosure of protected health information is contained in 45 Code of Federal Regulations part 164.512(e)(1)(i) (2003), which permits disclosure of " 'protected health information *in the course of any judicial or administrative proceeding*' " when it does so " '[i]n response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order.' " (*In re Christopher M.* (2005) 127 Cal.App.4th 684, 691, fn. 6 [26 Cal.Rptr.3d 61].)

Here, the trial court ordered CSH to "permit doctors appointed by the Court to examine any and all medical records, charts, files, documents or notes related to the above named [defendant]." The order further stated "[t]hat all treating medical staff, physicians, and psychiatrists be released from any obligation under HIPAA and be allowed to speak to [the district attorney] regarding [defendant]. [¶] This is a continuing order and shall remain in effect until terminated by the Court. This order is issued in compliance with the provisions of HIPAA (45 CFR [§] 164.512(e)). Personal service of this Court Order is not required."

■ Because the district attorney's subpoenas were ineffective, the only basis for the court's order relieving CSH's medical staff from their confidentiality obligations under HIPAA was section 6603, subdivision (c) providing the district attorney access to certain medical information. As discussed *ante*, section 6603, subdivision (c)(1) permits the district attorney access to information in order to perform an updated or replacement evaluation of a defendant in a proceeding under the SVPA. Section 6603, subdivision (c)(1) provides that such updated or replacement evaluations "shall include review of available medical and psychological records, including treatment records, consultation with current treating clinicians, and interviews of the person being evaluated, either voluntarily or by court order." (See *Albertson, supra*, 25 Cal.4th at p. 805 [§ 6603, subd. (c) allows the district attorney access to treatment record information *"insofar as that information is contained in an updated evaluation"* (italics added)].)

Defendants argue the trial court has no authority to make an order relieving medical staff from their confidentiality obligations under HIPAA because "Code of Civil Procedure section 2019.010 provides the exclusive methods for discovery in special proceedings of a civil nature." Defendants solely rely on legal authority supporting the principle that the Civil Discovery Act applies to SVPA proceedings to support their argument. Defendants' argument is without merit. Section 6603, subdivision (c)(1) directly authorizes a district attorney to obtain certain confidential health information. HIPAA prohibits disclosure of confidential health information absent an authorization or a court order in the context of a judicial proceeding. Here, defendants did not authorize the release of medical information, creating the necessity for the trial court to order CSH's medical staff to disclose information the district attorney was entitled to under section 6603, subdivision (c)(1).

■ Defendants also argue 45 Code of Federal Regulations part 164.512(e)(1)(v)(A) and (B) (2008) requires that "a protective order be issued prohibiting the parties from using or disclosing the protected health information for any purpose unrelated to the pending proceeding, and requiring the return of or destruction of the protected health information (including all

copies)." Defendants further argue, "[t]he court in this instance did issue a protective order that the information [shall] not be disclosed for any other purpose, but failed to include in the protective order the mandatory requirement that any and all copies be returned or destroyed at the conclusion of the present proceeding." Qualified protective orders, however, are not required when a court orders a covered entity to disclose certain protected health information. (45 C.F.R. § 164.512(e) (2008).)

On remand, we direct the trial court to modify its order to enable CSH's medical staff to disclose information pursuant to the parameters of section 6603, subdivision (c)(1).[7]

## VII.

### BECAUSE EACH OF THE DISTRICT ATTORNEY'S SUBPOENAS IS INEFFECTIVE, WE DO NOT NEED TO DECIDE THE EFFECT OF THE DISTRICT ATTORNEY'S FAILURE TO COMPLY WITH THE NOTICE TO CONSUMER REQUIREMENTS OF CODE OF CIVIL PROCEDURE SECTION 1985.3 OR THE TRIAL COURT'S DENIAL OF DEFENDANTS' MOTIONS FOR AN IN CAMERA REVIEW OF PRODUCED DOCUMENTS.

Defendants argue the district attorney failed to provide consumer notice as required by section 1985.3 of the Code of Civil Procedure. The district attorney did not respond to this argument in the returns. In the reply briefs the district attorney filed in the trial court in support of its motions to enforce the subpoenas and in opposition to defendants' motions to quash, the district attorney stated, "[t]here has been no violation of [Code of Civil Procedure section] 1985.3 which requires a Notice to the Consumer 10 days prior to production of the documents. Counsel has had more than the statutory time to peruse the SDT's, supporting authority and Orders supplied by [the district attorney]." Because each of the subpoenas is ineffective, we do not need to decide the consequence of the district attorney's failure to comply with the notice to consumer provisions contained in Code of Civil Procedure section 1985.3.

For the same reason, we do not need to address defendants' arguments the trial court further erred by denying their motions seeking the opportunity to review subpoenaed documents in camera for privilege before they were disclosed to the district attorney.

---

[7] In the traverses, defendants assert that since the time this court issued the alternative writs, "the medical and psychological records specified in Welfare and Institutions Code section 6603, subdivision (c) and *Albertson v*[.] *Superior Court*[, *supra*,] 25 Cal.4th 7[9]6, 805, have been released to the parties by respondent court."

## DISPOSITION AND ORDER

In *Lee v. Superior Court* (No. G041511), *Semeneck v. Superior Court* (No. G041523), *Rabuck v. Superior Court* (No. G041524), *Morehead v. Superior Court* (No. G041525), and *Sabatasso v. Superior Court* (No. G041526): The petitions for writ of mandate are granted. Let writs of mandate issue commanding the superior court to (1) vacate its orders releasing records, all dated October 7, 2008; (2) return any documents produced by CSH or the Department of Corrections and Rehabilitation in response to the subject subpoenas (other than documents produced pursuant to § 6603, subd. (c)(1)); and (3) issue an order permitting the medical staff of CSH to disclose confidential health information to the extent permitted by section 6603, subdivision (c)(1) as interpreted by the Supreme Court in *Albertson, supra*, 25 Cal.4th 796.

The Supreme Court issued a stay as to each of the superior court's orders pending further order of this court. The stay in each case is dissolved on issuance of the remittitur. Having served their purpose, the alternative writs of mandate issued by this court in each case are discharged.

Sills, P. J., and Moore, J., concurred.